## . SIMPER v. BROWN et al.

No. 4719.   Decided February 26, 1929.   (278 P. 529.)
Rehearing Denied June 20, 1929.

*Gustin & Pence,* of Salt Lake City, for appellant.

*J. H. McKnight,* of Salt Lake City, for respondent.

STRAUP, J.

Defendant Scorup appeals from a money judgment against him in favor of plaintiff. The principal assignments of error are that the court failed to make findings on all the material issues and that the findings as made are insufficient to support the judgment.

The substance of the complaint is that the Salina Co-operative Mercantile Institution, a corporation organized in 1881 with a capital stock of 2,000 shares of the par value of $5 each, was disincorporated in 1919; that in the court's order of disincorporation it was recited that the property of the incorporation by agreement had been divided among the stockholders, but in fact no such division had been made; that the plaintiff was the owner of 290.5 shares of the capital stock, and that he had not received his share of the property of the corporation, and "that the same is now in the hands of the defendants notwithstanding their agreement to divide the assets among the stockholders"; that the defendants for several years had been in complete charge of the property "and after the time of the disincorporation the said defendants divided the property of the said corporation between themselves and that they now hold the same and refuse to account to this plaintiff or to pay him his share of the said property, and that the said defendants have and continue to appropriate to themselves all of the profits of the business," which was alleged to be in a good condition; that at the time of the disincorporation in 1919

the probable value of the plaintiff's shares of stock was $10 each, "or a total sum of $8,715.00"; that the plaintiff "made demand on the said defendants for the same and that they failed, refused and neglected to pay him his proper share or proportion of said property." The prayer was for judgment "that a partition and appraisement of the property be made and that plaintiff be paid his pro rata share of said property, with interest at the legal rate from January 1919."

The answer of the defendants Brown and Scorup was a denial of the allegations of the complaint except as otherwise admitted. In the answers it was alleged that in 1900 the shares of the capital stock of the corporation were increased to 10,000 shares of the par value of $5 each, of which plaintiff was the owner of 290.5; that the corporation was dissolved as shown by an order of the district court attached to the complaint; that defendant Brown was the owner of 2,800 shares of the capital stock of the corporation, and defendant Scorup and others, including plaintiff, the owners of 1,800 shares; that it was agreed among the stockholders that some of the assets, as represented by his shares of stock, should be and were turned over to Brown and the remainder of the assets, as represented by the holders of 1,800 shares, including the plaintiff, was to be and was conveyed and transferred to Scorup, who, as the agent and representative of such stockholders, was to continue to operate and manage the mercantile business theretofore carried on by the corporation, for all such stockholders except Brown, "and that in consideration and in pursuance thereof the corporation conveyed and assigned to Scorup, as the agent for the said stockholders including the plaintiff, all of the assets of the corporation," which had not been turned over to Brown, which was 1800/4600 part of all the assets of the corporation, and that Scorup, as the agent and representative of such stockholders, in consideration of such conveyance and transfer, and with the approval of such stockholders, took possession of the mercantile

business and continued to operate and manage it until the 1st day of May, 1923, when the building and stock of goods were destroyed by fire in manner unknown to the defendants; that the defendant Scorup, as the agent and representative of such stockholders, assumed his pro rata share of the obligations of the company; that the reasonable value of the total assets of the corporation, consisting of real estate, improvements, goods, wares, and merchandise and accounts, was estimated to be $60,000, and that the reasonable value of such assets received by Scorup was of the estimated value of $13,000, but, because of a general financial depression, such value had depreciated more than 50 per cent before the commencement of this action, and that the indebtedness assumed by Scorup was $9,500; that the assets so received by him consisted of a store building and a stock of merchandise, but neither the building nor the merchandise was convertible into cash without great loss, and because thereof it was agreed by all of the stockholders, including the plaintiff, except Brown, that Scorup should continue to operate the business as a going concern; that he, in pursuance thereof, continued such operation, and from time to time purchased goods, wares, and merchandise of the total value of $100,000, and that to pay off an indebtedness of $9,500 and to carry on the business Scorup advanced of his own money the sum of $34,500; that the reasonable value of the services rendered by Scorup in managaing and carrying on the business from 1919 to the time of the fire was $6,000; that the assets of the business when the answers were filed consisted of real property of the value of $1,000 and an insurance policy, the face value of which was $25,000, but that the amount to be recovered thereon had not then been determined; that the indebtedness standing against the business due the defendant Scorup was $40,000 and $5,000 due wholesale houses. It was further alleged that the cause of action was barred by provisions of Comp. Laws Utah 1917, § 6468, subds. 2 and 3, and by section 6488. These matters were pleaded, not only

as answers, but also as a counterclaim by Scorup against the plaintiff. The defendants thus prayed that plaintiff take nothing by his complaint, and that he be required to contribute his proportion of moneys necessary to pay the debts of the business.

A reply was filed denying all the affirmative allegations of the answers. During the trial the action was dismissed as to Brown. The appeal thus involves rights only as between the plaintiff and the defendant Scorup.

The case was tried to the court. The only findings of fact made by the court were that in January, 1919, and prior thereto, all of the parties were stockholders in a corporation known as the Salina Co-operative Mercantile Institution; that in February, 1919, all of the stockholders of the corporation, including plaintiff, entered into an agreement to dissolve the corporation, and that it was regularly dissolved by order of the district court of Sevier county; that the property of the corporation, including portions belonging to the plaintiff and Scorup and others, was conveyed to the defendant Scorup "in trust for the benefit of all of the stockholders except Brown"; that out of a total of 1,829 shares the plaintiff was the owner of 290.5 shares; "that the property taken over by the defendant Scorup on the 10th day of February, 1919, was of the reasonable value of $16,735.69 over and above the debts and liabilities of the company at that time; that according to the number of shares of stock held by this plaintiff his proportion of such property was of the value of $2,658.13; that the said Scorup held said property in trust for this plaintiff Thomas W. Simper; that he has never paid the same to said Simper, nor any part thereof."

From the foregoing findings the court made conclusions of law that Scorup "became and was the trustee of property of the plaintiff of the value of $2,658.13," and that plaintiff was entitled to a judgment against Scorup for the principal sum of $2,658.13 and for the further sum of $1,913.85 as interest on such principal sum from February

10, 1919, at the rate of 8 per cent per annum, a total of $4,571.98. Judgment was entered accordingly.

Some point is made as to the nature of the action stated in the complaint, whether it is on the theory of a conversion and hence a case at law or one for an accounting and thus an action in equity.

Looking at a portion of the complaint, it has earmarks of the former, while looking at other portions it has earmarks of the latter. The answers and counterclaim apparently proceed on the theory that a trust relation existed between plaintiff and Scorup; that the interests of plaintiff and all other shareholders of the dissolved corporation, except Brown, in and to the property and assets of the corporation were conveyed and transferred to Scorup as their agent and representative to carry on and manage the mercantile business of the dissolved corporation for their use and benefit, from which the law implies a duty on the part of Scorup to account to them for his doings in the premises and for their interests in and to the property so conveyed and transferred to him and to the business carried on and conducted by him. Thus the relation and matters so stated in the answers and in the counterclaim were of equitable cognizance. However, on the point made by the defendant that no findings were made on all of the material and necessary issues raised by the pleadings and because the findings as made are insufficient to support the judgment, it is urged by the defendant that plaintiff is not entitled to hold the judgment, regardless of whether the case be considered as one at law or in equity. The principal parts of plaintiff's brief proceed on the theory that the case is one in equity and not at law. So, too, are the major parts of defendant's brief, that, if the plaintiff has any standing, it must rest on the theory of a trust relation, and a breach thereof which it is claimed was neither found nor proven.

We regard the real purpose of the action as seeking

equitable as distinguished from legal relief. But, whether it be regarded as the one or the other, it is quite clear, as contended by defendant, that the meager findings which are made do not dispose of all of the material issues presented by the pleadings. Nor are the findings as made sufficient to support the judgment as rendered or sufficient to support any kind of a judgment. The court found that a portion of the property of the dissolved corporation belonging to the defendant and other shareholders, except Brown, was conveyed to him in trust for the benefit of such shareholders holding in the aggregate 1,829 shares of the capital stock of the dissolved corporation of which the plaintiff held 290.5 shares, that the value of the property so taken over by Scorup in 1919 was of the value of $16,735.69 over and above the debts and liabilities of the company, and that plaintiff's proportion thereof was of the value of $2,658.13, and that "Scorup held such property in trust for the plaintiff and never paid the same nor any part thereof to him. Such findings are supported by the evidence; but there the findings stop. They, as far as they go, are inconsistent with some of the allegations of the complaint and with a theory of a conversion. They rather proceed on the theory of a trust relation of some sort, under which the property was turned over to Scorup. But the terms of the trust or the circumstances and conditions under which the property was turned over to Scorup are not found. The defendant alleged and the plaintiff denied that the property was conveyed to Scorup as the agent and representative of the stockholders holding in the aggregate 1,829 shares of the capital stock of the dissolved corporation, to continue, carry on, and manage for their use and benefit the mercantile business theretofore carried on by the corporation. The court made no finding whether such allegation was true or not, except that the property was turned over to Scorup in trust for the use and benefit of the plaintiff and others. Nor did the court find in what particular or in what manner Scorup breached the trust

which the court found existed, or in what particular he failed to discharge it or to comply with it.

Scorup alleged and the plaintiff denied that Scorup had advanced $35,500 of his own money to pay off an indebtedness of $9,500 of the dissolved corporation and to carry on and conduct the business, but no finding is made as to that. Defendant alleged, and plaintiff denied, that the defendant was entitled to $6,000 for services rendered by him in carrying on and conducting the business. No finding was made as to that. It is alleged and denied that a demand was made on Scorup by plaintiff for an accounting and that defendant failed and refused to make any. Not anything is found as to that allegation. Nor is there anything found by which the duty or obligation of Scorup with respect to the existing trust can be measured or determined. The defendant pleaded and the plaintiff denied the bar of the statute of limitations. No finding was made as to that. And, as is seen by a comparison of the pleadings and the findings, there were other material issues presented by the pleadings, and no findings made with respect to them.

The rule is well settled, in this as in other jurisdictions, that findings must respond to and cover all of the material issues raised by the pleadings, whether evidence respecting them was or was not adduced; and, if there be no such express or implied findings the judgment has no support. *Mitchell* v. *Jensen,* 29 Utah 346, 81 P. 165; *Dillon Imp. Co.* v. *Cleveland,* 32 Utah 1, 88 P. 670; *Everett* v. *Jones,* 32 Utah 489, 91 P. 360. Such is familiar doctrine. It applies to equity as well as to law cases. *In re Thompson's Estate* (Utah) 269 P. 103.

Thus, should the case be regarded as one at law the judgment, of necessity, would have to be reversed, and the case remanded for a new trial, for in such case we are not permitted to review and try the case de novo on the record and ourselves make or direct findings. We, however, regard the case as one in equity. In such case we have a broader power of review than in a law case. Still

that does not dispense with the necessity of the trial court to make findings on all of the material issues. Though we may, yet we are not required to, assume the function of determining for the first time the truth or falsity of material and controverted allegations. As to that the litigants are entitled first to the judgment of the trial court before seeking our judgment. Though we here should do, as we may in equity cases, disregard the findings of the trial court, try the case de novo on the record, and make or direct findings and a judgment, yet, where the trial court as here so completely failed to find on so many of the material issues, the evidence respecting them as scant as it is and the case tried on no clear or developed theory by either party, wisdom rather forbids the exercise of the power on such a record to make a final disposition of a cause.

The case was tried on stipulations as to some of the facts, stipulations as to what the defendant would testify to, reservations of objections as to the competency, materiality, and relevancy of some of the matters stipulated, brief disconnected testimony of the defendant and of another witness, and on some documentary evidence. It was stipulated that the corporation by a decree of court was dissolved in 1919. The decree was put in evidence. No point is made with respect to it. The total number of outstanding shares of the corporation consisted of 4,748.5 shares, of which Brown at the time of the dissolution held 2,929.5, Scorup, 663.5, the plaintiff, 290.5, and the remaining shares, amounting to about 860 shares, held by twenty-seven or twenty-eight other shareholders in amounts from a few shares up to 147 shares. An agreement was entered into by all of the stockholders that all of the property and assets of the corporation be distributed to or divided among them. In pursuance thereof, certain real estate of the corporation was conveyed to Brown by the corporation in satisfaction of the shares of stock held by him. The remaining assets and property of the corporation, consisting principally of

a stock of merchandise and the mercantile business thereto-
fore carried on by the corporation and a building and real
estate in and on which the business was carried on, were
conveyed by the corporation to Scorup for the use and bene-
fit of the other shareholders holding 1,829 shares, of which
Scorup held 663.5, the plaintiff, 290.5, and about 860 shares
held by twenty-seven or twenty-eight other shareholders.
In pursuance thereof, Scorup took possession of the prop-
erty so turned over to him and carried on the business for
such holders, including himself and the plaintiff. Shortly
thereafter Scorup, by purchase at $2.50 a share, acquired
all the rights of such shareholders except the plaintiff and
another. They declined to sell to him at such price. From
1919 to 1923, when the stock of goods and the building in
which the business was conducted was destroyed by fire,
Scorup, for a period of more than four years, carried on
and conducted the business and bought and sold goods in
the ordinary course of trade, substantially as though the
business was owned by him, and without consultation with
the plaintiff or with any other shareholder whose interest
was represented by him, and without any report or account-
ing at any time to them. It was further stipulated that
Scorup would testify that the group of shareholders repre-
sented by him were indebted to him for moneys advanced by
him in carrying on the business at various times between
January, 1919, and May, 1922, aggregating $33,060, and that
there was unpaid him a salary of a reasonable amount of
$125 a month, amounting in the aggregate to $6,000. It
further was stipulated that Scorup made no report of any
such loans or advances until after the commencement of
this action; that until then the plaintiff had no knowledge
that any such loans or advances had been made; that in 1922
Scorup entered into a written contract and option with one
Alex. Jennings, by the terms of which Scorup agreed to
sell all of the property transferred and conveyed to him;
that in such contract the value of the property was esti-
mated to be $40,000; that the plaintiff had knowledge that

Scorup was conducting and carrying on the business in the name of the Salina Cash Store, but that plaintiff took no part in the conduct of it, and, though he had not expressly consented to any of the transactions of Scorup in the management of the business, yet made no objection thereto; and that "two or three times agents of the plaintiff went to said store and asked for a settlement but were unable to agree upon terms of any settlement." It was further stipulated that Scorup would testify that the reasonable value of the merchandise at the time of the fire was $20,500, the amount collected by him on the insurance policy; that the reasonable value of the real estate was $2,000; and that he then had on hand cash of the business amounting to $758. It further was stipulated that the assessment roll of the county showed that in 1922 the merchandise was assessed for $13,000 and the improvements at $2,500; in 1923 the merchandise for $10,025 and the improvements for $2,300.

On the record we find sufficient evidence to support the finding of the trial court that the value of the property transferred to Scorup in 1919 was of the reasonable value of $16,735.69 over and above the debts and liabilities of the dissolved corporation, and that the then value of plaintiff's interest therein was $2,658.13. It having been stipulated that Scorup would testify that the merchandise at the time of the fire was of the value of $20,500, the real estate of the value of $2,000, the amount of cash then on hand, $758, a total value of assets and proceeds of $23,258, we have no difficulty in reaching the conclusion that such was the value of the assets at the time of the fire. We also have no difficulty in reaching the conclusion that Scorup, when called on to do so, was required to render an accounting to plaintiff of his receipts, disbursements, and expenses of the business, proceeds received by him for the loss by fire, the value of whatever property was still in his possession, as well as a general accounting respecting his doings in the premises, and that the burden was on him to render

such an accounting. The record, however, does not disclose that any demand was made on him to render any kind of an accounting or to make any kind of a report until the commencement of this action. But he then was required to make and render one. The only accounting rendered by him was that he had assets and proceeds of assets amounting in the aggregate to $23,258. Against that he made the claim that there was due him $39,060 for moneys advanced in the business and for services rendered. But no showing was made by him as to his receipts and disbursements or expenses or profits or losses of the business at any time. Though he later was called as a witness and was asked a few questions concerning entries in his bank books, yet counsel for neither party asked him anything concerning receipts or disbursements, profits or losses of the business, or anything concerning the management of it, except that he carried on the business in the name of Salina Cash Store. Apparently defendant contended himself with a showing that the amount of his claimed advances and for services greatly exceeded the amount of assets and the proceeds thereof held by him at the time of the fire.

In a way it is argued that the defendant could not render any other or different accounting because his books and the records of his business were destroyed by the fire. But it is not shown, nor was there any attempt made to show, that without such books and records he was unable to make or render a fairly true report or accounting of the business conducted by him for the period of four or more years in which he carried it on.

The defendant's claimed advances and his right to compensation for services were challenged. Chiefly, the only evidence given by him as to his advances was the stipulalation that he would testify that between January, 1919, and May, 1922, he, at different stated times, advanced sums of money from $500 to $4,000, aggregating $33,060. He further claimed that most of such advances were made by borrowing money from the bank on notes signed by the

Salina Cash Store and indorsed by him, and that, when the notes were paid, they were returned to him, but were destroyed by the fire. The Salina Cash Store was not a corporation. It was a mere name under which the defendant conducted and carried on the business. He pointed to some entries in his bank books which were not destroyed, which he claimed were credits given in the deposit column on account of notes. On the face of the entries there is not anything to designate that the entries so pointed to were different from other entries of deposits contained in the bank books. He, however, was asked only as to a few of such entries. They aggregated about $11,500. He was not asked anything about other entries. Whether such advances were or were not made constituted transactions peculiarly within his own knowledge. Because thereof, his books and papers destroyed by fire, no reports or accountings having been made by him with respect to the business carried on by him, the business conducted by him without consultation or conference with any one for whose benefit it was conducted, and plaintiff having no knowledge as to the manner in which it was carried on, no available means were afforded him by any direct or positive evidence to meet the mere testimony of the defendant that advances had in fact been made or that he had not been reimbursed therefor. The plaintiff at best could meet it only by indirect evidence and by inferences. Under such circumstances Scorup was required to make as fair and reasonable a showing of his claim as the nature of the case admitted and by the best evidence at his command.

It was shown that the defendant, during the time he was engaged in carrying on the business, was also engaged in sheep and in other business. It is argued by the plaintiff that during such time the defendant commingled moneys from the one business with moneys from the other, and because of such commingling it cannot now be ascertained what moneys came from the one source and what from the other, or whether whatever moneys borrowed from the

bank were used for the one business or for the other, and because thereof no true or accurate accounting can now be or was made by the defendant, and hence the court, in determining the amount plaintiff was entitled to recover, was justified in charging the defendant with the value of plain-interest in the property when received by Scorup, together with legal interest. But on the record it is not clear that the moneys were so commingled, or that the court, in arriving at the amount of the judgment, proceeded on the theory so suggested by the plaintiff.

On the record we thus are clear that the defendant was in duty bound to render a true account of his doings in the premises as heretofore indicated and as fully as may be by the best evidence at his command or available to him, and that no such an accounting was rendered by him. We, however, are not satisfied that such failure was due to willfullness or to mere inability. We think it rather due to a misconception of what by the action was required of him and to a confusion or misconception of the theory or theories on which the case was tried. Nor on the record as it now is are we satisfied as to the conclusiveness of the showing made of the advances and the amounts thereof as claimed to have been made by the defendant or for which he had not been reimbursed out of the business. Such matters do not appear to have been fully tried or heard. Until they are, we ought not, nor do we, now make a final disposition of the case. Since on the record it is clearly made to appear that the assets of the dissolved corporation not conveyed to Brown were conveyed to Scorup to continue and manage the business theretofore carried on by the corporation, for the use and benefit of all the shareholders except Brown, of which the plaintiff had knowledge and consented thereto, that no demand was made by the plaintiff for an accounting until the commencement of the action and the amount of his claim, if any, being unliquidated and undetermined, we also are of the opinion that whatever amount, if any, was due the

plaintiff should bear interest only from the commencement of the action.  Because on the record it also is shown that the property and business were used and carried on under the relation heretofore indicated by the defendant as the agent and representative of the plaintiff and others and for their use and benefit and that such relation without severance or interruption existed and continued from the time the property was turned over to the defendant until the commencement of the action, we think the pleaded bar of the statute not tenable.  Had the relation theretofore and for the period of the statute ceased, or been severed or repudiated, the rule would be different and the bar effectual.

We thus think the proper disposition of the case is to reverse the judgment and to remand the case for a new trial, with leave to either party to amend his pleadings if he be so advised.  However, in view of the circumstances, the costs below and the costs on this appeal should not now be awarded, but abide the final outcome of the case.  Such is the order.

CHERRY, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.