499 P.2d 842

Derold E. MORTHLAND and Joyce M. Morthland, Plaintiffs and Respondents,

v.

UTE LINER, INC., Defendant, Counterclaimant and Appellant.

No. 12593.

Supreme Court of Utah.

July 25, 1972.

Ellett, J., dissented and filed opinion.

Crockett, J., dissented and filed opinion.

Gerald L. Turner, of Turner & Perkins, Salt Lake City, for appellant.

John L. McCoy, of Ryberg, McCoy & Halgren, Salt Lake City, for respondents.

HENRIOD, Justice:

Appeal from a judgment declaring plaintiffs to be owners of a house trailer. Affirmed with costs to plaintiffs.

Ute Liner dispatched four trailers to an outfit named Manchester in St. Louis. It received them, hypothecated them and sold the one involved here to a car dealer who sold it to plaintiffs. This trailer was turned over by Ute to a minor whose identity it refused to divulge in the discovery process. This minor left the trailer either on or off the Manchester premises,—a fact this record does not reveal. The trial court decided the case on what is purported to have been a stipulation of facts, born of a colloquy between court and counsel, which amounted, not to a stipulation of facts, but a testimonial to confusion. This is proved by the briefs of the parties, whose separate and different statements of fact inimicably reject the idea of unanimity. The real frigid, cold and collective fact is that Ute signed a "Manufacturer's Statement of Origin to a Motor Vehicle" in which it said "the new motor vehicle described below [describing that involved here] has been transferred this 11th day of July 1970 . . . to Manchester Auto Sales" (from whom; by mesne conveyances, plaintiffs claimed ownership).[1] This declaration of independence was duly recorded and stamped in plaintiffs' favor and should have ended this matter on simple principles of estoppel.

Nonetheless, Ute says we didn't mean all this and we instructed our secret undisclosed minor driver, whom we do not wish to name, to follow our instructions, thus apparently to evade the Uniform Commercial Code[2] by confusion,—whether our dollie was parked on Manchester's lot or near it by the curb. This sort of nonsense was epitomized a long time ago by Zechariah Chafee when wisely he said

1. The dissent seems to miss the point by ignoring this important fact.

2. A monstrosity, to whose pedagogics I do not wish to bind my confreres,—an approval of the "Thieves Market," "Market Overt" or distortion of the concept of caveat emptor,—a banker's dream, a collection agency's panacea, and a fence's Commercial Code ritual that deifies larceny and glorifies the money changers in the temple—all of which I think raises constitutional enigmas.

"Equity will not pick up pins," and we are not constrained to confuse Ute's ebullience with reasonableness by encouraging recovery for self-indulged negligence,—and we might say,—possible lack of business common sense.

CALLISTER, C. J., and TUCKETT, J., concur.

ELLETT, Justice (dissenting).

I dissent.

This case was decided at a pretrial conference and supposedly upon stipulated facts. The main opinion states that there was "a stipulation of facts, born of a colloquy between court and counsel, which amounted, not to a stipulation of facts, but a testimonial to confusion." If this statement be true, then certainly the trial court erred in rendering a judgment for the plaintiffs because there was no evidence presented to him and nothing upon which he could have made such a ruling.

This case is before us on a complaint for the recovery of a motor home, and it seems to me the facts of the case which are not in dispute would require us to reverse the order and judgment of the trial court.

The defendant sent four motor homes to the Manchester Auto Sales in St. Louis, Missouri, pursuant to an order and gave instructions to the nonemployee drivers not to deliver them until payment was received. Through a ruse, two of the units were caused to be parked at the address of the business office of Manchester. They were not delivered to the sales lot, and possession was never given to Manchester. During the night these two units were spirited away, one to Texas, the other (the one involved in this action) to Illinois. Manchester never obtained possession of the unit in question. At best it only got custody, and that without any permission from anyone. The two units were parked for the night waiting for a check to be given on the morrow in payment for them, so that delivery could be made according to the purchase order.

The record does not show who took the motor home in question to Illinois, nor when it was taken. It does appear that the defendant here not later than August 7, 1970, notified the authorities in Illinois and Missouri to be on the lookout for the two missing units. Two days later the plaintiffs saw the vehicle on the lot of Classic Cars, a local car dealer in Decatur, Illinois, and on August 14 purchased it. By means not shown by the record Classic Cars got possession of a "Manufacturer's Statement of Origin to a Motor Vehicle," serial number H31BGOS 117 *315*, which states that the unit was transferred to Manchester Auto Sales on July 14, 1970.

A purported assignment of the certificate of origin is partly filled out in favor

of Classic Cars but not signed by anyone. A purported notary public says that James Bowes swore to the statement and subscribed to it on the 31st day of July, 1970. However, there is no indication in the record of who James Bowes is.

The respondents rely upon certain provisions of the Uniform Commercial Code, which has been adopted as the law in Utah. However, respondents fail to distinguish between mere *custody* and *possession* of a vehicle; and even if Manchester Auto Sales did have some interest in and to the vehicles parked overnight near its offices, it made no assignment to Classic Cars and, of course, Classic Cars had no title to give to the plaintiffs.

When the plaintiffs took possession of the vehicle in question, they were given a contract of sale to a unit with serial number H31BGOS 117 *260*; and when the plaintiffs got a certificate of title from Illinois to the vehicle, it was not for the one which they had purchased. [Emphasis added.]

It well may be that the vehicle was purposely misdescribed so that some form of title could be given without being detected, inasmuch as the authorities in Illinois had been alerted that the vehicle in question was stolen.

Upon learning where the vehicle in question was, the defendant went to Illinois, took possession of the vehicle, and returned it to Utah. The plaintiffs then filed this action in Utah to recover possession.

I think the judgment of the trial court should be reversed and custody and title to the vehicle declared to be in the defendant. I would award costs to the appellant.

CROCKETT, Justice (supplemental dissent).

I agree with what is said in the dissent of Justice Ellett. However, it is my view that this case should be remanded for a trial and for findings of fact upon what I regard to be the controlling issues in this case: whether there was in fact any knowledge or acquiescence on the part of, or properly imputable to the defendant, Ute Liner, Inc., as to the possession of the motor home , by Manchester Auto Sales, and as to how the certificate of origin got into its hands, or those of Classic Cars, Inc.

These deficiencies of this record are to be regretted: (a) that upon a case meriting the attention of the district, and of this court, someone did not take the trouble to prepare a written statement of facts, rather than to submit it upon what amounted to a colloquy between counsel and the trial court; (b) that the statements made by counsel are indefinite and contradictory as to vital facts; and (c) that there are no findings of fact made whatsoever, and therefore nothing to support the judgment.

**158**

The ultimate and controlling issue in this case is whether the plaintiffs Morthland were in fact bona fide purchasers for value. In this regard it is true that Sec. 70A–2–403, U.C.A.1953, appears to give them some support because it was designed to codify the modern trend of the law in placing the burden upon the dealer and the owner to protect persons who purchase property from dealers. However, the language of that section should be carefully noted. It requires that there be an *"entrusting of possession* of goods to a merchant who deals in goods of that kind . . . ." and further states that " 'entrusting' includes any delivery and *any acquiescence* . . ." in the possession. The fair import of that language is that in order to charge the owner with responsibility and deprive him of his property, there must be some knowledge, consent, or acquiescence in the possession of the dealer; and it surely would not comport with law or justice to construe it to mean that a dealer (i. e., Manchester) who obtains mere physical possession of a vehicle by any means whatsoever could transfer good title to any purchaser.

It was the plaintiffs' burden to show that the motor home was, with the defendant's knowledge, or at least with its acquiescence, placed or left in such a situation that it should be precluded from denying the plaintiff's claim of title.

As to whether there was such knowledge on the part of the owner, Ute Liner, Inc., the so-called "statement of facts" is at best equivocal; and I certainly see no basis therein from which it could be found that the motor home was delivered to the Manchester Sales lot. The statements relating thereto are these:

PLAINTIFFS' COUNSEL: And the motor homes themselves were delivered to the lot owned by Manchester Auto Sales. Is that right?

DEFENDANT'S COUNSEL: They were delivered *to the offices.* They were delivered at the street location of the offices. *They were never put on their lots for sale.*

PLAINTIFFS' COUNSEL: Well, they were—

DEFENDANT'S COUNSEL: They were delivered to the company. *They never got to the lots for sale* because when the party was instructed that when they were paid, delivery was to be made, and when they weren't paid, two of them were immediately driven right off, and the other two were taken.

THE COURT: But they were taken to the—

DEFENDANT'S COUNSEL: *They were never put on the lot for sale,* Your Honor.

The final and, in my opinion, conclusive reason why this judgment cannot be properly sustained is that there have been made no findings of fact nor conclusions of law, as required by both our rules of procedure and our decisional law. The fulfillment of that requirement is especially essential here to resolve the uncertainties resulting from what the main opinion candidly and correctly characterizes as "not to a stipulation of facts, but a testimonial to confusion." It is completely incomprehensible to me how a judgment can be sustained on any such a foundation.

Rule 52, U.R.C.P., requires that:

In all actions tried upon the facts without a jury . . . the court *shall find the facts* specially and state separately its conclusions of law thereon.

Pursuant to that rule, where a case is tried to the court without a jury, the court should find on all material issues of fact, either affirmatively or negatively. Baker v. Hatch, 70 Utah 1, 257 P. 673; Thomas v. Clayton Piano Co., 47 Utah 91, 151 P. 543; Simper v. Brown, 74 Utah 178, 278 P. 529. Failure to do so results in reversible error. Gaddis Investment Co. v. Morrison, 3 Utah 2d 43, 278 P.2d 284.

The deficiencies in this case, because of the uncertainty of the record, and the absence of any findings, parallel those in Johnson Corp. v. Peterson, 18 Utah 2d 260, 420 P.2d 615, where we stated:

*We are at a loss to understand why no findings of fact were made in the instant case.* The right to resort to the courts for the adjudication of grievances and the settlement of disputes is a fundamental and important one. An indispensable requisite to fulfilling that responsibility is the determination of questions of fact upon which there is disagreement. It is for this reason that our rules impose the duty of making findings on all material issues. . . .

. . . It is the duty of the trial court to find upon all material issues raised by the pleadings, and the failure to do so is reversible error. [Citing authorities]

It seems to me quite inescapable that if the rules of procedure and prior decisions of this court were adhered to this case should be remanded for a trial and determination of the issues essential to settling the dispute.

[All emphasis mine.]