# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 7, 2018

Lyle W. Cayce
Clerk

No. 17-60824
Summary Calendar

In the Matter of : PIONEER HEALTH SERVICES, INCORPORATED

Debtor

FIRST GUARANTY BANK, as successor to the interests of Republic Bank, assignee to the interests of Med One Capital Funding, L.L.C. (the Movant"),

Appellant

v.

PIONEER HEALTH SERVICES, INCORPORATED,

Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:17-CV-561

Before KING, ELROD, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Debtor-Appellee Pioneer Health Services, Inc., is a healthcare provider. It bought access to software to maintain its electronic health records and

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60824

financed the purchase through a third party. The third party assigned its interest to another party, the predecessor in interest to Appellant First Guaranty Bank. When Pioneer Health Services declared bankruptcy, First Guaranty Bank filed a motion to compel payment under the contract as an unexpired lease or an administrative expense. The bankruptcy court denied the motion, and the district court affirmed. First Guaranty appeals, and we AFFIRM.

## I.

Pioneer Health Services, Inc. is the debtor in this bankruptcy case. Pioneer Health owns a number of hospitals and healthcare facilities throughout the southeastern United States. In late 2011, it entered into several contracts with McKesson Technologies, Inc., for a "limited, nonexclusive, nontransferable, non-sublicensable, perpetual license" to the "Paragon Hospital Information System." The Paragon System is a certified electronic health record system used for billing, scheduling, and record retention and organization.

To pay for the $8.5 million purchase, Pioneer Health entered into three contracts with Med One Capital Funding, LLC. Two of those agreements are labeled "CONDITIONAL SALES AGREEMENT." These form agreements, bearing Med One's logo, each identify Pioneer Health as the "customer" and McKesson as the "vendor." The various software forming the Paragon System is listed under the heading "Equipment." Each of the agreements provides that "Med One Capital Funding, LLC hereby sells the equipment described above (the 'Equipment'), to Customer." The paragraphs that follow provide that the sale is "non-cancelable" and "may not be terminated for any reason." Both of the agreements provide that upon completion of the installment payment plan, title to the "Equipment" will transfer to Pioneer Health. Until then, Med One

No. 17-60824

"shall retain title to the Equipment for legal and security purposes," and Pioneer Health authorized Med One to file UCC-1 financing statements.

Additional paragraphs apply "[i]n the event the Equipment includes software." If so, Pioneer Health agreed, among other things, that "Med One is leasing (and not financing) the Software to Customer." If Pioneer Health fails to make payments, it must delete the software, and the sales agreements give Med One the right to declare any license terminated and to access Pioneer Health's systems to disable the software.

A third letter agreement rounds out the relationship. The letter is addressed "To: Whom it may concern" and states at the top, "Hospital Letterhead Please." In the letter agreement, Pioneer Health "acknowledges that it has entered into a financing arrangement" with Med One. The letter agreement provides that McKesson will submit any bills directly to Med One but that Pioneer Health nonetheless retains ultimate responsibility for ensuring payment to McKesson. Under the agreement, Med One may notify McKesson of any default, and McKesson "may" terminate the software license and associated services.

Med One later assigned the agreements to Republic Bank, the predecessor in interest to Appellant First Guaranty Bank. Republic Bank filed a UCC Financing Statement with the State of Mississippi in 2012.

After Pioneer Health declared bankruptcy, McKesson filed a motion to compel Pioneer Health to pay administrative expenses for the healthcare technology services provided under Pioneer Health's agreement with McKesson. The bankruptcy court deemed the expenses an "actual, necessary expense of preserving the estate" and awarded McKesson a percentage of its expenses. *See* 11 U.S.C. § 503(b)(1).

Med One and First Guaranty then filed their own motion to compel. They argued that the payments under the Conditional Sales Agreements were

3

No. 17-60824

"actual, necessary costs of preserving the estate" and "actual, necessary costs and expenses of preserving or transferring patient records during the closing a [sic] health care business." They also argued that the "Conditional Sales Agreements" were unexpired leases under 11 U.S.C. § 365(d)(5). The bankruptcy court denied the motion, holding that the relevant agreements were not "true leases." Med One and First Guaranty moved for reconsideration. The bankruptcy court, finding no error in its prior opinion, denied the motion. The district court summarily affirmed. First Guaranty appeals the district court's judgment.

## II.

On appeal from a district court's review of a bankruptcy court decision, we apply the same standard as the district court. *Asarco, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 600 (5th Cir. 2011). We therefore review the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. *Id.* at 601. The bankruptcy court treated Med One and First Guaranty's motion as a complaint and Pioneer Health's opposition as a motion to dismiss. *See* Fed. R. Bankr. P. 7012(b) (providing that Federal Rule of Civil Procedure 12(b) applies in adversary proceedings); *Teta v. Chow (In re TWL Corp.)*, 712 F.3d 886, 900 n.16 (5th Cir. 2013). Therefore, our inquiry on appeal is whether Med One and First Guaranty pleaded sufficient factual content to allow the court to draw the reasonable inference that they were entitled to an administrative expense claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This inquiry requires that we accept Med One and First Guaranty's factual allegations as true, though "we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

4

No. 17-60824

## III.

First Guaranty argues that it is entitled to payment under three different provisions of the Bankruptcy Code: 11 U.S.C. §§ 365(d)(5), 503(b)(1), and 503(b)(8). We consider each in turn and conclude that First Guaranty is not entitled to payment.

## A.

Section 365(d)(5) provides that "[t]he trustee shall timely perform all of the obligations of the debtor . . . first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property . . . until such lease is assumed or rejected." 11 U.S.C. § 365(d)(5). We look to state law to determine whether a contract is in fact a lease. *See United Airlines, Inc. v. HSBC Bank USA, N.A.*, 416 F.3d 609, 615 (7th Cir. 2005); *cf. Valley Educ. Found., Inc. v. Eldercare Props. Ltd. (In re Eldercare Props. Ltd.)*, 568 F.3d 506, 515 (5th Cir. 2009) (O'Connor, J.) ("[I]n bankruptcy proceedings, courts of appeals look to state law to decide contract issues." (alteration in original) (quoting *River Prod. Co. v. Webb (In re Topco, Inc.)*, 894 F.2d 727, 738 (5th Cir.1990))). "If a lease is merely a disguised sale and security interest, Code § 365 will not be applicable." 7 William L. Norton Jr. & William L. Norton, III, *Norton Bankr. L. & Prac.* § 127:8 (3d ed. April 2018 update).

Utah, like most states, has adopted the Uniform Commercial Code ("UCC").[1] *Morthland v. Ute Liner, Inc.*, 499 P.2d 842, 844 (Utah 1972). Utah

---

[1] This appeal presents two choice of law issues. First, First Guaranty contends that Utah law applies by virtue of a choice of law provision in the purchase orders for the Paragon System. Pioneer Health argued below that Mississippi law governs the contracts. On appeal, it states that "Mississippi's and Utah's version of the UCC are almost identical" and that they would lead to the same result. Given that concession, we adopt the same approach as the bankruptcy court and assume without deciding that Utah law applies.

Second, First Guaranty argues that software is not a "good," and, thus, the common law and not the UCC applies. The bankruptcy court rejected that argument and determined

courts "look behind the form of an agreement to determine" whether it is a lease or a sales agreement reserving a security interest. *Bd. of Equalization of Salt Lake Cty. v. First Sec. Leasing Co.*, 881 P.2d 877, 878 (Utah 1994) (quoting *LMV Leasing, Inc. v. Conlin*, 805 P.2d 189, 194 (Utah Ct. App. 1991)). "The UCC gives specific instances in which a security interest is always created. Under these factual situations, no further analysis is required." *Id.* at 879 (citation omitted) (citing predecessor to Utah Code § 70A-1a-203(2)). These factual situations include where the agreement is "in the form of a lease," the agreement "is not subject to cancellation by the lessee," and "the lessee . . . is bound to become the owner of the goods." Utah Code § 70A-1a-203(2)(b).

First Guaranty Bank argues that the "Conditional Sales Agreements" are, in fact, leases. To do so, it points to paragraphs 11 to 14 of the agreements.[2] In these paragraphs, Pioneer Health "agrees that Med One is leasing (and not financing) the Software" and grants Med One the right to end its use of the software if it fails to pay. But the parties' labels are not the key consideration, for Utah law elevates substance over form. *See First Sec. Leasing Co.*, 881 P.2d at 878. The parties' "lease" provides that the transaction is "non-cancelable"

that the outcome would be the same under the common law anyway. Although First Guaranty renews its argument that the UCC does not apply, it does not argue that the outcome would be any different under the common law or cite any Utah cases that support that conclusion. Whether the UCC applies to software appears to be an unresolved issue of Utah law. Given that First Guaranty has forfeited any argument that the outcome of this case would be different under Utah common law, we need not resolve this issue in the first instance. *Cf. Rutherford v. Harris County*, 197 F.3d 173, 193 (5th Cir. 1999) ("[W]e will not consider an issue that is inadequately briefed.").

[2] First Guaranty contends the bankruptcy court misapplied Rule 12 by determining that paragraphs 11 to 14 did not apply. Although the bankruptcy court was bound to accept First Guaranty's factual allegations as true, it was not required to accept its interpretation of the contract, which is a legal conclusion. *See Iqbal*, 556 U.S. at 678; *cf. Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 293 (5th Cir. 2007) (characterizing the district court's "interpretations of the contracts" as "legal conclusions"). At any rate, our analysis above does not depend on deeming paragraphs 11 to 14 inapplicable. *Cf. Sojourner T v. Edwards*, 974 F.2d 27, 30 (5th Cir. 1992) ("We can . . . affirm the [lower] court's judgment on any grounds supported by the record.").

and "may not be terminated for any reason." Both of agreements then provide that upon completion of the payment plan, title to the "Equipment" will transfer to Pioneer Health. Accordingly, the "Conditional Sales Agreements" are "in the form of a lease," "are not subject to cancellation by" Pioneer Health, and Pioneer Health "is bound to become the owner of the goods." Utah Code § 70A-1a-203(2)(b). Under Utah law, "no further analysis is required," *First Sec. Leasing Co.*, 881 P.2d at 879, and the "Conditional Sales Agreements" created a security interest rather than a lease.[3]

The bankruptcy court therefore correctly determined that First Guaranty had failed to state a plausible claim that it was entitled to payment as a lessor under 11 U.S.C. § 365(d)(5).[4]

## B.

Section 503(b)(1)(A) provides for payment of "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). We have interpreted this section to impose a temporal limitation: the costs and expenses must have arisen post-petition through a transaction with the debtor-in-possession. *See Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re*

---

[3] First Guaranty and Med One belatedly argued in their motion for reconsideration in the bankruptcy court that the parties' agreements formed a "finance lease" under the Utah UCC. "A motion for reconsideration may not be used to . . . introduce new arguments." *LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005). As such, we do not consider on appeal arguments first raised below in a motion for reconsideration. *Id.*

[4] First Guaranty argues that it should have been allowed discovery regarding the parties' intent because the contract is allegedly ambiguous. But the only ambiguity First Guaranty identifies is the word "included" (we assume it meant "includes" as used in paragraph 11 of the "Conditional Sales Agreements"). It offers no further explanation of the ambiguity. We assume that the alleged ambiguity is over whether paragraphs 11 to 14 apply to the agreement. As noted previously, our analysis does not depend on holding these paragraphs inapplicable, as the bankruptcy court did. Therefore, First Guaranty has identified no ambiguity that warrants discovery or that would alter the outcome of this case if resolved in its favor. *Cf. Hopson v. Chase Home Fin., L.L.C.*, 605 F. App'x 267, 268 (5th Cir. 2015) (per curiam) (affirming motion to dismiss where "the plaintiffs [did] not explain how discovery would have affected the conclusion that their complaint failed to state a claim").

*Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 387 (5th Cir. 2001) (citing *Toma Steel Supply Inc. v. TransAm. Nat. Gas Corp. (In re TransAm. Nat. Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992)).

It is undisputed that the transactions at issue arose years before Pioneer Health filed for bankruptcy. Nor, as we conclude above, are the "Conditional Sales Agreements" leases, such that each payment is a "new expense[]" that "pay[s] for new inputs." *United Airlines*, 416 F.3d at 613. The parties' relationship is a financing arrangement and the payments due to First Guaranty and Med One are an "'old' expense to be adjusted to deal with financial distress." *Id.*

## C.

Section 503(b)(8) provides for payment of "the actual, necessary costs and expenses of closing a health care business incurred by a trustee or by a Federal agency . . . or a department or agency of a State or political subdivision thereof." 11 U.S.C. §503(b)(8). Even assuming that a creditor has standing to assert an administrative expense claim for costs incurred by a trustee or government entity, First Guaranty did not even allege that Pioneer Health had closed or was even preparing to close any facilities. Rather, First Guaranty merely alleged in its motion that it was entitled to payment "*to the extent that* some the [sic] Debtors are closing or their patients being [sic] transferred" (emphasis added). In other words, First Guaranty had no facts to indicate that Pioneer Health or any of its facilities was closing or preparing to do so—it was merely asserting its right to payment on the off-chance that Pioneer Health had closed, was closing, or would in the future close a facility. "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. First Guaranty's allegations merely posited that it might be entitled to payment under § 503(b)(8) if Pioneer Health *were*

No. 17-60824

closing a facility. That was insufficient to state a claim to payment that was anything but "speculative."

In sum, First Guaranty failed to allege facts that raise a plausible inference that it is entitled to payment under 11 U.S.C. §§ 365(d), 503(b)(1)(A), or 503(b)(8).

## IV.

For the foregoing reasons, we AFFIRM.