UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-2550
_____


IN THE MATTER OF:  TRANSAMERICAN NATURAL GAS CORP.,

                                                        Debtor.

TOMA STEEL SUPPLY, INC.,

                                                        Appellant,

                              versus

TRANSAMERICAN NATURAL GAS CORPORATION, ET AL.,

                                                        Appellees.


_____

Nos. 91-2716,
91-2717 and 91-2718
_____


IN THE MATTER OF:  TRANSAMERICAN NATURAL GAS CORP.,

                                                        Debtor.

TOMA STEEL SUPPLY, INC.,

                                                        Appellant,

                              versus

GHR ENERGY CORP.,

                                                        Appellee.

IN THE MATTER OF:  TRANSAMERICAN NATURAL GAS CORPORATION,

Debtor.

TOMA STEEL SUPPLY, INC.,

Appellee,

versus

TRANSAMERICAN NATURAL GAS CORPORATION,
f/k/a GHR ENERGY CORPORATION,

Appellant.

_____

Appeals from the United States District Court for the
Southern District of Texas
_____

(November 25, 1992)

Before REAVLEY, JOLLY, and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

These over-litigated consolidated appeals, which have been characterized by unnecessary contentiousness since their inception in the bankruptcy court in 1987, arise out of Toma's sale of well casing, post-petition, to TransAmerican, a Chapter 11 debtor-in-possession.  TransAmerican objected to Toma's administrative expense claim, alleging that the bankruptcy estate received no benefit, because some of the casing was defective and caused damages in excess of the amount of Toma's claim.  In 1987, the bankruptcy court allowed Toma's claim in its entirety and ordered immediate payment.  In 1989, the district court vacated the

bankruptcy court's orders, and remanded the case for findings of fact and conclusions of law on TransAmerican's objection. On remand, the bankruptcy court denied Toma's claim, and the district court affirmed. We hold that Toma satisfied its burden of proving that the casing benefited the estate, and that the bankruptcy court adequately considered TransAmerican's objection when it initially allowed Toma's claim. We therefore REVERSE the judgment of the district court, and REMAND the case for further proceedings consistent with this opinion.

I

A brief summary of the lengthy procedural history of these appeals is in order. TransAmerican filed a voluntary bankruptcy petition under Chapter 11 in 1983. In 1985, during the pendency of TransAmerican's reorganization proceedings, Toma and TransAmerican entered into a contract pursuant to which Toma sold well casing to TransAmerican. In August or September of 1986, TransAmerican stopped paying Toma's invoices. Nevertheless, over the next several months, Toma continued to supply casing to TransAmerican, until the balance due was $2,288,683.45 (nearly Toma's entire net worth).

In the fall of 1986, TransAmerican experienced five successive well failures. Four of the wells contained casing supplied by Toma; the fifth contained casing supplied by another distributor. After these failures, casing supplied by Toma was retrieved from another well that had not been completed.

In February 1987, Toma filed in the bankruptcy court emergency motions for allowance of administrative expenses of approximately $2.3 million for casing supplied to TransAmerican pursuant to the contract. TransAmerican opposed the motion.

On March 11, 1987, the bankruptcy court conducted an evidentiary hearing on Toma's administrative expense claim. TransAmerican asserted that Toma had provided no benefit to the estate, because some of the casing supplied by Toma was defective, causing well failures and damages exceeding the balance TransAmerican owed Toma. Although the bankruptcy court stated that the hearing was limited to determining administrative expense priority, and not to whether Toma had supplied defective casing, both parties introduced evidence relevant to TransAmerican's objection. At the conclusion of the hearing, the bankruptcy court found that Toma had satisfied its burden of proving that the expenses were reasonable and necessary for the preservation of the estate. It allowed Toma's administrative expense claim in full, and directed TransAmerican to pursue its claims for defective casing in another court of competent jurisdiction within 60 days.

Toma then filed amended and supplemental motions regarding the emergency nature of its need for immediate payment. It emphasized the availability of insurance sufficient to satisfy any damages TransAmerican might be awarded if it eventually proved that the casing was defective. The bankruptcy court conducted a hearing on the supplemental motions on April 9. At that hearing, TransAmerican argued that the bankruptcy court should postpone

ruling on Toma's motion for immediate payment "until the court in which the action should be filed has determined the precise amount of Toma's liability to [TransAmerican]." On April 11, TransAmerican complied with the bankruptcy court's earlier order and filed suit against Toma in Texas state court.

On May 11, 1987, the bankruptcy court entered an order granting Toma's motion for immediate payment. It found that Toma had introduced evidence of severe financial hardship. It further found that Toma had submitted proof of insurance in an amount sufficient to cover any damages caused by defects in the casing. It therefore ordered TransAmerican immediately to pay Toma $2,288,634.45, the balance due. When TransAmerican failed to pay, and failed to take any steps to stay execution of the bankruptcy court's order, Toma garnished its bank accounts. After another hearing on June 15, the bankruptcy court ordered Toma to escrow $500,000 in an interest-bearing account to protect TransAmerican from third-party liens by Toma's suppliers. It further ordered Toma to assign to TransAmerican its interest under its product liability insurance policies to protect TransAmerican in the event that TransAmerican succeeded on its claim for damages allegedly caused by defective casing. The unescrowed portion of the garnished amount, approximately $1.8 million, was released to Toma.

After the bankruptcy court denied its motion for a new trial, TransAmerican appealed the bankruptcy court's May 11 payment order, as modified by the June 15 order, to the district court. In the meantime, on September 4, 1987, the bankruptcy court entered an

order confirming TransAmerican's plan of reorganization. The plan provided that each holder of an allowed administrative expense claim was to "be paid the full amount of such expense or claim when due (but not earlier than the consummation date) except to the extent the Bankruptcy Court orders otherwise." Toma's allowed administrative expense claim was not treated separately in the confirmation order.

On June 30, 1989, the district court vacated the bankruptcy court's orders and remanded the case for findings of fact and conclusions of law on TransAmerican's objection to Toma's administrative expense claim. On August 30, 1989, the bankruptcy court ordered the parties to file motions regarding TransAmerican's motion for new trial, which it considered to have been revived by the district court's judgment. It further directed both parties to submit proposed findings of fact and conclusions of law regarding the March 11, 1987 hearing.

On September 13, 1989, TransAmerican filed an amended motion for new trial.[1] On September 29, both parties submitted proposed findings of fact and conclusions of law regarding the March 1987 hearing. TransAmerican requested that payment be delayed until "final adjudication of all issues." Toma argued that equitable

---

[1]In its original motion for new trial filed in 1987, TransAmerican had urged the bankruptcy court to refrain from ordering immediate payment in order to permit it to establish its defenses to Toma's claim, "preferably" in state court. However, during the pendency of its appeal to the district court, TransAmerican's state court pleadings had been stricken as sanctions for discovery abuses. In its 1989 amended motion for new trial, TransAmerican urged adjudication of the defective casing issue in the bankruptcy court.

grounds supported allowance of payment prior to adjudication of TransAmerican's defective casing claim. Toma urged the bankruptcy court to make findings of facts and conclusions of law based upon the existing record from the March 1987 hearing.

On October 2, 1989, the bankruptcy court ordered Toma to return the escrowed $500,000 to TransAmerican, but denied without prejudice TransAmerican's request that the $1.8 million obtained by Toma through the garnishment be returned to TransAmerican (the "Escrow Dissolution Order"). On February 20, 1990, it entered findings of fact and conclusions of law, denying Toma's administrative expense claim (the "Administrative Expense Order"). Based on the evidence at the March 11, 1987 hearing, the bankruptcy court found that Toma supplied defective casing to TransAmerican, and that Toma had failed to prove that it rendered a benefit to the estate. Although it acknowledged that causation and damages were being litigated in state court, it nevertheless found that the casing was defective, that "TransAmerican did not receive what it contracted to buy from Toma," and that "it is more probable than not that the defective casing caused the well failures."

TransAmerican then renewed its motion seeking disgorgement, and on January 10, 1991, the bankruptcy court ordered that Toma disgorge the $1.8 million it received in the 1987 garnishment (the "Disgorgement Order"). Toma appealed the Administrative Expense Order, the Escrow Dissolution Order, and the Disgorgement Order to the district court, which affirmed all three orders on April 22, 1991.

Toma filed a notice of appeal on May 22, 1991.[2]  Toma then sought, in the district court, to obtain approval of a supersedeas bond in order to stay execution of the district court's judgment affirming the bankruptcy court's Disgorgement Order.  TransAmerican objected, contending that Toma had not properly appealed the Disgorgement Order and that Toma was not entitled to stay execution of that order by posting a supersedeas bond.  TransAmerican also sought permission from the district court to register the district court's April 24, 1991 judgment in Colorado, where Toma's place of business is located, so that it could seek enforcement of the Disgorgement Order and execute on Toma's assets.  The district court denied TransAmerican's motion for registration, and approved Toma's proposed supersedeas bond, staying execution of the Disgorgement Order during the pendency of Toma's appeal to this court.  TransAmerican has appealed from both of these orders.

We consolidated all matters on appeal.  Before us are (1) Toma's appeal from the district court's April 24, 1991 judgment (affirming the bankruptcy court's Administrative Expense Order, Escrow Dissolution Order, and Disgorgement Order); (2) Toma's appeal from the district court's June 30, 1989 judgment (remanding for findings on TransAmerican's objection); (3) TransAmerican's appeal from the district court's July 19, 1991 order (denying TransAmerican's motion to permit registration of the April 24, 1991

---

[2]Toma also appealed from the district court's June 30, 1989 order vacating the bankruptcy court's allowance of immediate payment of its claim and remanding the case to bankruptcy court for findings of fact and conclusions of law.

judgment); and (4) TransAmerican's appeal from the district court's August 12, 1991 order (approving Toma's supersedeas bond and permitting Toma to stay execution of the April 24, 1991 judgment).

II

We directed the parties to brief the issues of whether the orders from which Toma has appealed are final and, if so, whether the notices of appeal are proper.  We are satisfied that all of the orders appealed from are final.  However, TransAmerican contends that Toma did not properly appeal the district court's April 24, 1991 judgment in its entirety.  That judgment affirmed the bankruptcy court's orders entered October 2, 1989 (Escrow Dissolution Order), February 20, 1990 (Administrative Expense Order), and January 10, 1991 (Disgorgement Order).  In its notice of appeal, Toma stated that it appealed from "the Final Order and Judgment of the District Court . . . entered in this case on April 24, 1991, affirming the Bankruptcy Court Order of February 20, 1990, denying Toma['s] . . . Emergency Request for Immediate Payment of Administrative Expense . . . ."  According to TransAmerican, because Toma expressly referred only to the Administrative Expense Order, Toma did not properly perfect an appeal of the district court's judgment insofar as it affirmed the Disgorgement Order.

The Federal Rules of Appellate Procedure require that a notice of appeal "designate the judgment, order or part thereof appealed from."  Fed. R. App. P. 3(c).  We construe this portion of Rule 3(c) broadly.  Osterberger v. Relocation Realty Service Corp., 921

F.2d 72, 74 (5th Cir. 1991). "If there is an error in designating a judgment appealed, the error should not bar an appeal if the intent to appeal a particular judgment can be fairly inferred, and if the appellee is not prejudiced or misled by the mistake." Friou v. Phillips Petroleum Co., 948 F.2d 972, 974 (5th Cir. 1991).

We can easily infer Toma's intent to appeal the district court's affirmance of the bankruptcy court's Disgorgement Order. Contrary to TransAmerican's argument, the Disgorgement Order clearly is dependent upon the disposition of Toma's administrative expense claim. If we reverse either the district court's April 24, 1991 judgment affirming the denial of Toma's administrative expense claim, or its June 30, 1989 judgment vacating the bankruptcy court's orders and remanding the case, it necessarily follows that the Disgorgement Order must be vacated; and we have no doubt that we have jurisdiction to do so.

We also conclude that TransAmerican has not been prejudiced or misled. Within ten days following the filing of its notice of appeal, Toma filed a statement of issues to be presented on appeal and an application for approval of supersedeas bond, both of which identified the affirmance of the Disgorgement Order as having been appealed. Obviously, Toma would not have considered it necessary to post a supersedeas bond if it had not intended to appeal the district court's affirmance of the bankruptcy court's Disgorgement Order. Furthermore, we note that TransAmerican has fully briefed the issue.

Accordingly, we hold that Toma properly perfected an appeal from the district court's April 24, 1991 judgment in its entirety.

## III

Toma first challenges the district court's June 30, 1989 order remanding the case to the bankruptcy court for findings of fact and conclusions of law on TransAmerican's objection. It contends that the bankruptcy court adequately considered TransAmerican's objection, made appropriate findings of fact and conclusions of law, and properly directed TransAmerican to pursue its claim for damages allegedly caused by defective casing in another forum. Next, Toma contends that the bankruptcy court's denial of its administrative expense claim on remand from the district court was improper. Toma argues that the bankruptcy court failed to focus on whether Toma had provided a benefit to the estate, but instead based its decision solely on a substantive determination that Toma breached its contract by supplying defective pipe to TransAmerican. Toma further argues that it was deprived of due process to the extent the bankruptcy court made a substantive determination that Toma had supplied defective casing, based solely on the restricted evidence from the March 11, 1987 hearing. It also contends that the bankruptcy court's finding that the casing was defective is clearly erroneous, because it was based on insufficient evidence and an improper allocation of the burden of proof.[3] Because we

[3]Toma also contends that confirmation of TransAmerican's plan of reorganization in September 1987 mooted TransAmerican's appeal of the allowance of Toma's administrative expense claim. This contention, based on Toma's position that TransAmerican appealed only the timing of payment, and not the allowance, of Toma's claim,

hold that the bankruptcy court adequately considered TransAmerican's objections in its first ruling, and the district court erred in remanding the case, we do not address the issues regarding the proceedings following remand.

A

The bankruptcy court's findings of fact "will not be set aside unless clearly erroneous." Matter of Delta Towers, Ltd., 924 F.2d 74, 76 (5th Cir. 1991). However, "when a finding of fact is premised on an improper legal standard, that finding loses the insulation of the clearly erroneous rule." Matter of Fabricators, Inc., 926 F.2d 1458, 1464 (5th Cir. 1991). "Conclusions of law, on the other hand, are subject to plenary review on appeal." Id.

The Bankruptcy Code provides that "[a]n entity may file a request for payment of an administrative expense." 11 U.S.C. § 503(a). Section 503(b) provides that, "[a]fter notice and a hearing, there shall be allowed, administrative expenses, . . . including--(1)(A) the actual, necessary costs and expenses of preserving the estate. . . ."

> The purpose of Section 503 is to permit the debtor's business to operate for the benefit of its prepetition creditors. In order to effectuate a successful reorganization, third parties must be willing to furnish postpetition goods or services on credit. Third parties might refuse to extend credit to debtors-in-possession for fear that their claims would not be paid, but an advance payment requirement would impede the debtor's business. Section 503 requires that such claims be given priority, therefore inducing third parties to

is meritless.

- 12 -

> extend credit and enhancing the likelihood of a successful reorganization.

_In re Coastal Carriers Corp._, 128 B.R. 400, 403 (Bankr. D. Md. 1991).

As the district court correctly noted, TransAmerican's objection to Toma's administrative expense claim gave rise to a "contested matter" governed by Bankruptcy Rule 9014. Rule 9014 provides:

> In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court orders an answer to a motion. The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004, and, unless the court otherwise directs, the following rules shall apply: 7021, 7025, 7026, 7028-7037, 7041, 7042, 7052, 7054-7056, 7062, 7064, 7069, and 7071. The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply. . . . The clerk shall give notice to the parties of the entry of any order directing that additional rules of Part VII are applicable or that certain of the rules of Part VII are not applicable. The notice shall be given within such time as is necessary to afford the parties a reasonable opportunity to comply with the procedures made applicable by the order.

Unlike adversary proceedings, which we have described as "full blown federal lawsuits within the larger bankruptcy case," and which are governed by all of the rules in Part VII of the Bankruptcy Rules, contested matters are "subject to the less elaborate procedures specified in Bankruptcy Rule 9014." _Matter of Wood & Locker, Inc._, 868 F.2d 139, 142 (5th Cir. 1989). Contested matter proceedings are generally designed for the adjudication of

simple issues, often on an expedited basis. 9 <u>Collier on Bankruptcy</u>, ¶ 9014.05 (15th ed. 1992). Rule 9014 specifically provides that Bankruptcy Rule 7052, which incorporates Fed. R. Civ. P. 52, applies in contested matters. The bankruptcy court was, therefore, required to enter findings of fact and conclusions of law on whether there was a benefit to the estate. However, Rule 9014 does not provide for the automatic application of Bankruptcy Rule 7008, incorporating Fed. R. Civ. P. 8 (affirmative defenses) or Bankruptcy Rule 7013, incorporating Fed. R. Civ. P. 13 (counterclaims). Those rules apply only if the bankruptcy court so directs, and the parties are notified in accordance with Rule 9014.

Toma had the burden of proving that its claim was for "actual, necessary costs and expenses of preserving the estate." The words "actual" and "necessary" have been construed narrowly: "the debt must benefit [the] estate and its creditors." <u>NL Indus., Inc. v. GHR Energy Corp.</u>, 940 F.2d 957, 966 (5th Cir. 1991), <u>cert. denied</u>, ___ U.S. ___, 112 S. Ct. 873 (1992). A prima facie case under § 503(b)(1) may be established by evidence that (1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability of the debtor-in-possession's business to function as a going concern. After the movant has established a prima facie case, the burden of producing evidence shifts to the objector; but the burden of persuasion, by a preponderance of the evidence, remains with the movant. <u>See Coastal Carriers</u>, 128 B.R. at 404-05; <u>In re Buttes Gas & Oil Co.</u>, 112 B.R. 191, 193 (Bankr. S.D. Tex. 1989). Mere allegations,

unsupported by evidence, are insufficient to rebut the movant's prima facie case.

At the March 11, 1987 hearing, Toma introduced evidence that on September 10, 1985, it entered into a requirements contract with TransAmerican as debtor-in-possession; that pursuant to the contract, it supplied approximately 1,500,000 feet of casing to TransAmerican; that TransAmerican used the casing in conducting its business of well drilling, completion, and operation; and that the unpaid balance owed Toma by TransAmerican was $2,288,683.45. Toma thus established a prima facie case under § 503(b)(1).

TransAmerican produced the following evidence in support of its objection. In the fall of 1986, five of TransAmerican's wells failed. Four of the wells contained pipe supplied by Toma, which apparently had been manufactured at four separate mills; the fifth contained pipe supplied by another distributor. After these failures, casing supplied by Toma was retrieved from La Perla No. 73, a well that had not yet been completed, and had not failed. (It was not feasible to retrieve the casing from the four failed wells containing casing supplied by Toma, because the casing had already been cemented in place.) The casing from La Perla No. 73 was inspected, and two joints were found to be rejectable. Three joints from La Perla No. 73 were sent to a laboratory for metallurgical testing, which confirmed that two of the three joints were defective or rejectable. TransAmerican's quality control inspector testified that he had not yet concluded his investigation

into the cause of the well failures. It was only based on the defects found in two of the joints from La Perla No. 73, that he assumed that there were defects in the rest of the casing string. Brookins, a TransAmerican vice president responsible for completion procedures, testified that he did not think TransAmerican's procedures caused the well failures. Because TransAmerican had used the same procedures in drilling 700 wells without failure, Brookins testified that it was his opinion that the failures were caused by defective casing supplied by Toma. TransAmerican had incurred $1,797,104.36 in repair costs for the failed wells as of the date of the hearing, and it estimated that it would incur an additional $800,000.

There was evidence that casing supplied by Toma had been inspected at least twice prior to being placed in the wells; that casing supplied by Toma had been used in approximately 50 other TransAmerican wells without incident; and that none of Toma's other customers had complained of casing failures. An expert witness for Toma reviewed the records from the failed wells and inspected all of the casing that had been removed from La Perla No. 73. He testified that the well failures were caused by imprudent operating practices and completion procedures by TransAmerican, rather than defective casing.

At the conclusion of the March 11 hearing, the bankruptcy court allowed Toma's administrative expense claim in its entirety, finding that:

> [T]here was not a[n] . . . overwhelming amount of
> evidence by Toma to show that these goods . . .

supplied were actual and necessary for preservation of the estate. . . . I think it barely tipped the burden of proof by preponderance of evidence . . . [T]here's enough in the record to say that it certainly didn't supply the tubular products other than to be placed in the wells, which were used by [TransAmerican] for -- at least intended by [TransAmerican] to generate revenues. The reasoning behind that -- what I'm trying to say, I guess in a way is, that okay I realize that Toma didn't present just an overwhelming amount of evidence to show that they were actual and necessary, but there's enough in there for me to go ahead and be persuaded that the supplying of the tubular goods were actual and necessary for the Debtor to use.

The bankruptcy court had the following to say regarding TransAmerican's objection:

I don't know whether this casing entitles [TransAmerican] to compensation of some form and if such form would be placed as an offset against the amount owing Toma, and I don't know what theory the Debtor would seek recovery under, since I have no pleadings appropriately before me. The Debtor, as I see it, could choose any number of remedies: suit on a contract; suit on warranty; . . . possibly sounding in tort. [B]ut until . . . [TransAmerican] steps forward as a Plaintiff in some court and seeks an actual recovery under some theory of law and gets a determination . . . from a court of competent jurisdiction, there's nothing I can do, other than to go ahead and allow this as an administrative expense . . . .

The burden is on [TransAmerican] . . . to . . . attack that claim by Toma, on whatever legal theory they want to recover on. I don't know what legal theory they're going to -- I cannot try in the 503(b)(1)(a) claim matter their --I don't know, is it sounding in contract; is it sounding under warranty? What part? I mean, I don't know. How will they know? They say that they don't owe you any money because your client supplied them bad product. That's not enough.

In its May 11, 1987 order, the bankruptcy court, after noting that it had previously allowed Toma's administrative expense claim,

- 17 -

held that Toma was entitled to immediate payment.  The bankruptcy court found that the equities favored Toma, because it supplied goods to TransAmerican post-petition; there was no evidence that the parties agreed to postpone payment until plan confirmation; the casing supplied by Toma could not be recovered; Toma had introduced evidence of the devastating financial effect that TransAmerican's non-payment had on its business because of the size of the debt in comparison to its overall operations; and Toma had submitted proof of insurance in an amount sufficient to cover any damages suffered by TransAmerican as a result of any defects in the casing.  With respect to TransAmerican's objection, the bankruptcy court stated:

> [TransAmerican] has asked that this court defer an order of payment of Toma's administrative claim until it can pursue an offsetting claim against Toma for alleged defects in the goods. This court notes that there is case law to support Debtor's request.  [Citations omitted.]  However, until [TransAmerican]'s claim against Toma for defective pipe is determined by a court of appropriate jurisdiction, this court cannot apply an offset to Toma's claim for administrative expenses.  Therefore, since the time of payment of this claim is a matter within this court's discretion, and as elaborated upon above, the equities of the matter weigh in Toma's favor, this court concludes that Toma's motion should be granted.  Debtor is free to come back to this court with its offsetting claim when that claim has been liquidated in the appropriate court.

TransAmerican filed a motion for new trial, requesting the bankruptcy court to permit it to establish its defenses to Toma's claim in state court before ordering payment.  TransAmerican stated that the Texas state courts were "much better equipped to handle" the dispute.  On June 15, 1987, the bankruptcy court denied TransAmerican's motion, but modified its May 11 order by requiring

- 18 -

that $500,000 of the $2,300,000 be escrowed in an interest-bearing account. Furthermore, the court required Toma to assign to TransAmerican all rights under its product liability insurance policies "as a result of the claims of Debtor for defective casing."

In its June 30, 1989 judgment, the district court held that the bankruptcy court did not have discretion to refuse to make findings on TransAmerican's objection, which it characterized as "an affirmative defense to liability on the underlying contract upon which Toma sought to recover," notwithstanding the fact that the bankruptcy court had not directed that Bankruptcy Rule 7008 would apply in the contested matter involving Toma's administrative expense claim. Concluding that Toma's right to reimbursement could not be determined until such findings were made, the district court vacated the bankruptcy court's orders and remanded for findings of fact and conclusions of law on TransAmerican's objection.

C

We hold that the bankruptcy court adequately considered TransAmerican's objection in allowing Toma's administrative expense claim, and in ruling that Toma was entitled to immediate payment. We further hold that its May 11 and June 15, 1987 orders contain sufficient findings of fact and conclusions of law reflecting such consideration.

The district court erred in holding that the bankruptcy court had no discretion to refuse to make findings of fact and conclusions of law on the substantive merits of TransAmerican's

"affirmative defense."  Because the bankruptcy court did not direct that Bankruptcy Rule 7008 would apply in the contested matter involving Toma's administrative expense claim, it acted well within its discretion when it refused to make findings of fact on the merits of TransAmerican's defective casing claims.[4]  In a commendable effort to prevent this contested matter from expanding into a "full blown" trial, that needlessly would have consumed its scarce resources, the bankruptcy court directed TransAmerican to litigate the merits of its state law claims in another forum.  The fact that Toma's administrative expense claim was based on an underlying contract did not automatically transform that claim into an adversary complaint seeking recovery on the underlying contract, nor did it expand the scope of the contested matter into a "full-blown" trial of counterclaims or affirmative defenses based on state contract law.

The sole issue before the bankruptcy court was whether Toma met its burden of proving that the casing benefited the bankruptcy

---

[4]TransAmerican maintains that, if its recoupment defense cannot be given effect in a § 503 contested matter proceeding, it will suffer worse treatment as a Chapter 11 debtor than it would have suffered as a non-debtor, in contravention of 11 U.S.C. § 558, which provides that "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate. . . ."  This argument is specious.  First, it overlooks the substantial benefits that TransAmerican received as a Chapter 11 debtor--benefits that are not available to non-debtors.  Moreover, nothing in § 558 gives TransAmerican the right to have the merits of its defective casing claims or its recoupment defense adjudicated in a § 503 contested matter.  TransAmerican did not ask the bankruptcy court to direct that Rule 7008 apply, did not appeal the bankruptcy court's direction to litigate its defective casing claim in state court, and was perfectly content to have the issue tried in that forum until it received an unfavorable ruling as the result of its own conduct.

estate.  Although TransAmerican's objection and supporting evidence are relevant and must be considered in making that determination, the bankruptcy court properly exercised its discretion in refusing to rule on the merits of TransAmerican's defective casing claims. See Matter of Strause, 40 B.R. 110, 113 (Bankr. W.D. Wis. 1984) (refusing to consider debtor's potential counterclaims raised in opposition to § 503(b)(1) administrative expense claim); see also In re Gellert, 55 B.R. 970 (Bankr. D.N.H. 1985) (holding that court can "consider" affirmative defenses or counterclaims raising "extraneous" issues in deciding whether to exercise its equitable discretion in granting relief from automatic stay, but "such consideration . . . does not authorize proceeding to a res judicata determination of such allegations on the merits").

The total amount of Toma's administrative expense claim is $2,288,683.45.  TransAmerican's damages allegedly caused by defective casing total approximately $2,500,000.  Relying on state law,[5] TransAmerican maintains that, because its repair costs exceed the amount of Toma's claim, there was no benefit to the estate.  It insists that the benefit to TransAmerican's estate "can only be determined by the amount of money TransAmerican was to have paid Toma, offset by the damage incurred by TransAmerican's estate due to the defective casing."  We disagree.  The purpose of the benefit analysis under § 503 is to determine whether the estate received a

---

[5]TransAmerican's recoupment defense is based on § 2.717 of the Texas Business and Commerce Code, which provides that, upon notice to the seller, a purchaser of goods may deduct from the amount owed to the seller all or any part of damages resulting from the seller's breach of contract.

benefit--not whether the estate was harmed.  See Matter of Strause, 40 B.R. at 113 ("the principal purpose of according administrative priority to claims for benefit to the estate is to prevent unjust enrichment of the debtor's estate, rather than simply to compensate the creditor").  Toma introduced evidence at the March 1987 hearing, including copies of its invoices, that the cost of the entire casing string in each well was approximately $80,000 per well.  Thus, invoices for allegedly defective casing total, at most, approximately $400,000 ($80,000 each for the four failed wells, plus $80,000 for the casing in La Perla No. 73, which did not fail).

Although the amount to be allowed as an administrative expense must be measured in dollars and cents, (thus satisfying § 503(b)(1)'s requirement that the costs or expenses be "actual"), the question whether the estate has been benefited cannot be so narrowly confined.  As we have already noted, the purpose of the priority treatment afforded by § 503 is to encourage third parties to provide necessary goods and services to the debtor-in-possession so that it can continue to conduct its business, thus generating funds from which prepetition creditors can be paid.  Although the estate receives a benefit that often can be measured by the actual cost of necessary goods or services supplied, the estate also receives other less readily calculable benefits, such as the ability to continue to conduct business as usual.  See In re Coastal Carriers, 128 B.R. at 404.

The district court apparently agreed with TransAmerican's argument that the benefit analysis must focus solely on the amount of Toma's invoices and the amount of TransAmerican's alleged damages. Such an analysis is incomplete, because it ignores the fact that TransAmerican had no complaints regarding over 80% of the casing upon which Toma's claim was based. Furthermore, it disregards evidence that casing supplied by Toma had been used successfully in approximately 50 other profitable wells. In short, consideration of the damages allegedly caused by a small portion of the casing supplied by Toma is only part of the analysis. Section 503 also requires consideration of the fact that Toma's willingness to undertake the risk of supplying goods to TransAmerican as debtor-in-possession enabled TransAmerican to continue conducting its business, as well as the fact profits from wells in which Toma-supplied casing was successfully used were available for payment of prepetition creditors, and enhanced the likelihood of successful reorganization. We agree with TransAmerican's assertion that the profitability of a well cannot be attributed solely to the casing. Nevertheless, it is clear that casing is an essential part of a well: In the absence of third parties such as Toma, who were willing to undertake the risks of doing business with TransAmerican as debtor-in-possession, there would be no casing, thus no wells, thus no profits, and thus no payment to the creditors.

Applying these principles to the evidence presented at the March 11, 1987 hearing, it is clear that the bankruptcy court correctly held that Toma satisfied its burden of proving that the

casing it supplied to TransAmerican benefited the estate. TransAmerican made no claim that <u>all</u> of the casing was defective, and produced direct evidence that, at most, two joints of casing removed from La Perla No. 73, a well which had not failed, were defective. Even if the entire strings of casing in all five of the Toma-supplied wells about which TransAmerican complained are assumed to be defective, that casing represents only approximately $400,000 out of Toma's total claim of approximately $2,300,000. With the exception of the casing used in those five particular wells, TransAmerican does not dispute that it used the remainder of the casing supplied by Toma to conduct its business of drilling, completing, and operating wells, which generated revenue to fuel its reorganization.

In conducting its 1987 benefit analysis, the bankruptcy court adequately considered TransAmerican's objection. To protect TransAmerican, the bankruptcy court ordered that $500,000 of the approximately $2.3 million claim be placed in an escrow account to protect TransAmerican from third-party liens by Toma's suppliers. It further ordered Toma to assign its rights under its product liability insurance policies to TransAmerican. Because such steps would have been unnecessary in the absence of an objection to Toma's claim, they obviously reflect a consideration of the possibility that TransAmerican might succeed in proving its allegation that some of the casing was defective. The course chosen by the bankruptcy court was well within its discretion.

To sum up, we conclude that the bankruptcy court adequately considered TransAmerican's objections and correctly held that Toma met its burden of proving that its sale of casing benefited TransAmerican's estate. Because the bankruptcy court entered adequate findings of fact and conclusions of law in accordance with Bankruptcy Rules 9014 and 7052, the district court erred in vacating its orders and remanding the case for findings of fact and conclusions of law on the merits of TransAmerican's objections.

## IV

TransAmerican has appealed from the district court's order approving Toma's supersedeas bond and allowing Toma to stay execution of the Disgorgement Order pending appeal, and from the district court's order denying TransAmerican's motion to permit registration of the April 24, 1991 judgment. In the light of our ruling on the administrative expense claim, these issues are moot for the purposes of this appeal.

## V

The April 24, 1991 judgment of the district court is VACATED. The June 30, 1989 judgment of the district court is REVERSED, and the case is REMANDED to the district court. The district court is instructed to vacate the bankruptcy court's Escrow Dissolution Order, Administrative Expense Order, and Disgorgement Order, and to reinstate the bankruptcy court's May 11, 1987 order, as modified by its June 15, 1987 order. The district court is authorized to order

such further proceedings as may be necessary to effectuate the reinstated orders, in a manner consistent with this opinion.

REVERSED and REMANDED.

REAVLEY, Circuit Judge, concurring:

Toma Steel had sold more than a million feet of pipe to TransAmerican during the Chapter 11 reorganization. The pipe was used in the completion and operation of over 50 TransAmerican wells. It is uncontroverted that the sale of pipe was beneficial and necessary to the operations of TransAmerican and to the preservation of the debtor estate, and the bankruptcy judge so found. In 1986 TransAmerican ceased payment of Toma Steel invoices; the explanation was given at a later time that there were questions about the quality of the pipe. Toma Steel continued the sales and, in 1987, sought administrative expense allowance and payment for 315,000 feet of pipe.

TransAmerican objected to the allowance of the administrative expense, not because the pipe for which those sales were made )) or any portion of those sales )) was defective, but solely on the ground that TransAmerican had a damage claim against Toma Steel that was greater than the price of the subject 315,000 feet of pipe.

The bankruptcy court could have put this entire controversy into an adversary proceeding or applied the adversary rules in the pending proceeding. However, the court was not required to do that, and under the pressure of its oppressive docket, chose not to do so. It clearly excluded any consideration of the TransAmerican damages claim in allowing the administrative expense after a hearing pursuant to 11 U.S.C. § 503(b). See D-1 Enterprises Inc. v. Commercial State Bank, 864 F.2d 36, 39 (5th Cir. 1989). However, when immediate payment was ordered, the bankruptcy court

protected TransAmerican by the escrow and by assuring that insurance covered its damages claims.

I concur in this court's holding that the bankruptcy court committed no error and that the district court erred in remanding for further findings. I emphasize that TransAmerican's defense was not that a certain portion of the pipe, for which Toma Steel sought allowance and payment, was defective. The counterclaim or defense was based upon a wholly separate damages claim.