Hillsborough-northern judicial district
No. 94-634

STEWART F. GROSSMAN, TRUSTEE OF THE MURRAY CREDITORS' TRUST

v.

DAVID W. MURRAY, INDIVIDUALLY AND DAVID W. MURRAY D/B/A ERIN REALTY COMPANY, D/B/A SECOND LEASING COMPANY, D/B/A CHARMING FARE COUNTRY CLUB, D/B/A LEASED RESTAURANT EQUIPMENT COMPANY

August 7, 1996

*Hoefle & Phoenix, P.A.*, of Portsmouth (*Daniel C. Hoefle* and *Lawrence B. Gormley* on the brief, and *Mr. Gormley* orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Charles J. Dunn* and *William S. Gannon* on the brief, and *Robert E. Murphy, Jr.*, orally), for the defendant.

THAYER, J. The plaintiff, Stewart F. Grossman, as trustee of the Murray Creditors' Trust (trust), brought a plea of assumpsit in Superior Court (*Sullivan*, J.) to recover the amount of real estate taxes paid on certain real property held in the trust. The defendant, David W. Murray, conceded liability for the taxes but filed a counterclaim seeking damages for breach of a right of first refusal to purchase the property. The superior court granted summary judgment for the plaintiff on grounds of res judicata and collateral estoppel. We reverse and remand.

On April 6, 1989, an involuntary chapter 11 bankruptcy petition was filed against the defendant in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division (bankruptcy court). Pursuant to a stipulation of settlement dated April 30, 1991, the trust was created for the benefit of "holders of allowed claims in Murray's Chapter 11 case." Under a reorganization plan approved by the bankruptcy court on December 4, 1991, title to a parcel of land at Long Point in Moultonborough (the Long Point property) on Lake Winnipesaukee was transferred to the trust. The property passed directly to the trust and was never part of the bankruptcy estate.

In a terms letter dated April 26, 1991 (terms letter), the defendant was granted "the exclusive and irrevocable right of first refusal . . . to purchase the Long Point property on the same terms and conditions and for the purchase price as provided for in any agreement to purchase the Long Point property between the [plaintiff] and any third-party purchaser." The terms letter further provided that the right must be exercised within thirty days of receipt by the defendant of a copy of an executed purchase and sale agreement between the plaintiff and a third-party purchaser. The defendant was also granted exclusive possession of the property prior to any sale, "[i]n consideration of payment of all real estate taxes . . . owing as of the date of the transfer."

In October 1992, the plaintiff executed with SVD Corp. (SVD) a purchase and sale agreement (the SVD agreement) for the Long Point property. Shortly thereafter the defendant assigned his interest in the right of first refusal to First Express, Inc. (FEI). In November 1992, FEI delivered a Notice of Exercise of Right of First Refusal to the bankruptcy court. Appended to this notice was a copy of a purchase and sale agreement (the FEI agreement) which FEI asserted "mirrors in all material respects" the SVD agreement, other than the purchaser's name.

The plaintiff filed a motion with the bankruptcy court "for determination of whether right of first refusal was timely exercised, and for order regarding sale of [the Long Point property]." A hearing on the motion was held on November 23, 1992, and on December 16, 1992, the bankruptcy court issued an order permitting the plaintiff to sell the Long Point property "free and clear" to SVD. The court held that FEI's attempted exercise of the right of first refusal was ineffective because the FEI agreement materially differed from the SVD agreement.

The bankruptcy court identified several discrepancies between the FEI and SVD agreements. First, the FEI agreement recited a purchase price $76,300 lower than in the SVD agreement. This difference was in part explained by a clause in the FEI agreement providing that FEI would pay the trust $76,300 at closing "for the purpose of reimbursing [the trust] for any fee owed to any broker employed by [the trust]." The bankruptcy court interpreted this clause to mean that FEI would pay broker's fees, up to $76,300, only to the extent the trust actually incurred such fees in connection with the SVD agreement. The court observed that "[n]o evidence was offered regarding the payment of a fee or commission to a broker," leaving open the possibility that no broker was involved in the SVD agreement.

Second, the bankruptcy court noted that an addendum to the FEI agreement (addendum) not found in the SVD agreement granted the defendant "the right to extend the closing date for a period not to exceed thirty days in order to cure title defects or to otherwise make the Premises conform to the terms of the Purchase and Sale Agreement." The addendum also provided for a supplemental agreement to be executed by November 23, 1992, "whereby [FEI] waives any objections to taking title to the [Long Point property] subject to the conditions and restrictions imposed . . . in a Warranty Deed dated September 5, 1964 . . . to the extent such conditions and restrictions apply." In the event this supplemental agreement was not executed by November 23, 1992, the FEI

agreement was to become "null and void." The bankruptcy court observed that this agreement never came into being. The court characterized both of these provisions found in the addendum as "relevant and material deviations" from the SVD agreement.

The defendant and FEI filed a joint motion to reconsider, which the bankruptcy court denied. The defendant, but not FEI, filed an appeal in the United States District Court for the District of Massachusetts. The parties agree that the plaintiff finally sold the Long Point property on February 24, 1993. On April 8, 1993, the defendant's appeal in the United States District Court was dismissed for failure to file a brief. On August 16, 1993, the plaintiff filed a plea of assumpsit in superior court alleging that the defendant was liable for $4,481.35 in real estate taxes due on the property as of the February 24, 1993, closing. The defendant conceded liability for this amount, and this issue is not on appeal.

The defendant's counterclaim alleged that FEI had initially delivered an agreement without the addendum found by the bankruptcy court to contain "relevant and material deviations," that the plaintiff had refused to sign this agreement without the addendum, that the addendum operated solely for the benefit of the trust, and that the plaintiff's "requiring the addendum . . . materially breached the Right of First Refusal solely and proximately causing Long Point to be conveyed to SVD, thereby entitling [the defendant] to damages he would have realized had Long Point been sold to FEI."

The plaintiff moved to dismiss the counterclaim on grounds of res judicata and collateral estoppel. The defendant then amended his counterclaim to include four additional counts. Count II alleged that the defendant was entitled to damages as a third-party beneficiary for a finder's fee in the amount of $186,300 that he would have received from FEI had the plaintiff not breached the right of first refusal. Count III alleged that the plaintiff tortiously interfered with the fee agreement between the defendant and FEI, resulting in a loss of the $186,300 fee. Count IV claimed that the plaintiff breached the right of first refusal "by failing to grant FEI the same extension as that granted SVD." Count V alleged that the plaintiff's "insisting on the addendum to the [FEI agreement] and failing to grant FEI the same extension as that granted to SVD constitute a breach of the covenant of good faith and fair dealing."

The "extension" mentioned in Counts IV and V is an apparent reference to the February 24, 1993, date of sale of the Long Point property. The bankruptcy court found that the SVD agreement provided for a closing date of November 30, 1992. This extension

from November 30 to February 24, according to the defendant, constituted either a material alteration of the SVD agreement or the formation of a new purchase and sale agreement with SVD. In either case, the defendant maintains that he was entitled to notice and a new right of first refusal pursuant to the terms letter. Although the defendant does not spell out the legal theory under which he seeks relief for this alleged second breach of the right of first refusal, we assume that he again claims breach of contract as a third-party beneficiary.

The superior court treated the plaintiff's motion to dismiss the counterclaim as a motion for summary judgment and granted it on grounds of collateral estoppel and res judicata. The trial court ruled that the "issue before the Bankruptcy Court and in the defendant's counterclaim in this court [is] the same — whether the defendant's nominee properly exercised the right of first refusal." Summary judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* RSA 491:8-a, III (1983). In reviewing the grant of a motion for summary judgment, "we consider the evidence in the light most favorable to the party opposing the motion, taking all reasonable inferences that may be drawn from the evidence in that party's favor." *Mason v. Smith*, 140 N.H. 696, 698, 672 A.2d 705, 706 (1996).

■ "The normal rules of *res judicata* and collateral estoppel apply to the decisions of the bankruptcy courts." *Katchen v. Landy*, 382 U.S. 323, 334 (1966). In their briefs, the parties cite federal law as determining the res judicata effect of bankruptcy court decisions but rely upon both federal and State law in discussing the collateral estoppel effect. The question of which standard to apply has no bearing on the outcome of this case, and, without deciding whether the parties' approach is correct, we adhere to their usage.

■■ In its most basic formulation, "the doctrine of collateral estoppel bars a party to a prior action, or a person in privity with such a party, from relitigating any issue or fact actually litigated and determined in the prior action." *Daigle v. City of Portsmouth*, 129 N.H. 561, 570, 534 A.2d 689, 693 (1987); *accord Dennis v. R.I. Hosp. Trust Nat. Bank*, 744 F.2d 893, 899 (1st Cir. 1984). Res judicata, or "claim preclusion," is a broader remedy and "bars the relitigation of any issue that was, or *might have been*, raised in respect to the subject matter of the prior litigation." *Dennis*, 744 F.2d at 898. Where res judicata applies, "[t]he claim extinguished includes all rights to remedies with respect to all or any part of the

transaction, or series of connected transactions, out of which the action arose." *Id.* (quotation and ellipses omitted).

The issue before the bankruptcy court was whether FEI's attempted exercise of the right of first refusal was effective. In resolving this issue, the bankruptcy court determined: (1) it had jurisdiction to hear the case; (2) the right of first refusal existed; (3) it was properly assigned to FEI; (4) it was timely exercised by FEI; and (5) the exercise was ineffective because the FEI agreement contained "relevant and material deviations from the SVD agreement."

In his State court counterclaim, the defendant is not attempting to relitigate any of these issues. Rather, the underlying issues raised by the defendant's counterclaim are: (1) whether the plaintiff in fact refused to accept the FEI agreement without the addendum; (2) if he did, whether he thereby breached his contractual duties under the terms letter or tortiously interfered with the fee agreement between FEI and the defendant; (3) whether the defendant qualifies as a third-party beneficiary or whether the plaintiff was aware of the fee agreement between the defendant and FEI; (4) whether, by extending the closing date of the SVD agreement, the plaintiff materially altered the SVD agreement or replaced it with a new agreement; (5) if he did materially alter or replace the SVD agreement, whether the plaintiff was required by the terms letter to give notice and a new right of first refusal; and (6) whether any breach of contract or tortious interference by the plaintiff actually caused the defendant to lose the finder's fee. None of these issues was "actually litigated and determined," *Daigle*, 129 N.H. at 570, 534 A.2d at 693, in the bankruptcy proceeding.

█ Nor can we say that the defendant's counterclaim "might have been[] raised," *Dennis*, 744 F.2d at 898 (emphasis removed), before the bankruptcy court. Counts IV and V of the defendant's counterclaim are based on acts alleged to have occurred *after* the bankruptcy proceeding. With regard to counts I, II, and III, the bankruptcy proceeding was conducted as a "contested matter" pursuant to Bankruptcy Rule 9014. "Contested matter proceedings are generally designed for the adjudication of simple issues, often on an expedited basis." *Matter of Transamerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992); *see* 9 COLLIER ON BANKRUPTCY ¶ 9014.05 (15th ed. 1996). Bankruptcy Rule 7013, which incorporates Federal Rule of Civil Procedure 13 (counterclaims), does not apply in a contested matter unless the bankruptcy court so directs and notifies the parties. BANKRUPTCY RULE 9014; *Transamerican Natural Gas Corp.*, 978 F.2d at 1416. This, the

parties agree, did not happen in this case. In the absence of a full adversarial proceeding, *see* BANKRUPTCY RULE 7001 *et seq.*, a res judicata determination of the defendant's counterclaim would have been inappropriate. *See In re Gellert*, 55 B.R. 970, 975 (Bankr. D. N.H. 1985).

The plaintiff argues that res judicata should nonetheless apply because the defendant *could* have requested an order from the bankruptcy court making Rule 7013 applicable. The bankruptcy court, however, would have been under no obligation to grant such a request, especially where, as here, the counterclaim arose solely under State law and did not affect property of the bankruptcy estate. *See Transamerican Natural Gas Corp.*, 978 F.2d at 1419. Moreover, requiring parties to move for application of Rule 7013 or lose any and all counterclaims would undermine the purpose for which Rule 9014 was designed; namely, "the adjudication of simple issues, often on an expedited basis," *id.* at 1416, without expansion into "full-blown" trials needlessly consuming scarce resources, *id.* at 1419.

Without expressing an opinion as to whether the defendant has alleged sufficient facts in his counterclaim to make out a *prima facie* case for breach of contract as a third party beneficiary, *see Tamposi Associates v. Star Mkt. Co.*, 119 N.H. 630, 633, 406 A.2d 132, 134 (1979), or tortious interference, *see Roberts v. General Motors Corp.*, 138 N.H. 532, 539, 643 A.2d 956, 960–61 (1994), we conclude that the defendant's counterclaim is not precluded, on grounds either of collateral estoppel or res judicata, by the bankruptcy court order.

*Reversed and remanded.*

All concurred.