In re RIVER OAKS FURNITURE, INC., Debtor.

BNY Financial Corp., Appellant,

v.

Lifestyle Enterprises, Inc.; and River Oaks Furniture, Inc., Appellees.

Bankruptcy No. 98–21152.

Adversary No. 1:01CV218–D.

United States District Court, N.D. Mississippi, Eastern Division.

Oct. 30, 2001.

James W. Newman, IV, Newman & Newman, Jackson, MS, for River Oaks Furniture, Inc.

Craig M. Geno, Harris, Geno & Dunbar, PA, Jackson, MS, for BNY Financial Corp.

Kenneth M. Burns, Okolona, MS, for Lifestyle Enterprises, Inc.

## OPINION

DAVIDSON, Chief Judge.

This matter comes before the court on appeal from the United States Bankruptcy Court for the Northern District of Mississippi. The Appellant, BNY Financial Corporation, appeals the December 12, 2000, order of the bankruptcy court granting an administrative expense claim to Lifestyle Enterprises, Inc. for $84,205.29. Upon due consideration, the court finds that Lifestyle Enterprise's administrative expense claim should be allowed. Accordingly, the bankruptcy court's order shall be affirmed.

### A. Factual and Procedural Background

■ On March 3, 1998, River Oaks Furniture, Inc. (River Oaks), a furniture wholesaler in Tupelo, filed a petition with the United States Bankruptcy Court for the Northern District of Mississippi, seeking reorganization pursuant to Chapter 11 of the Bankruptcy Code. Subsequently, in April of 1998, River Oaks placed an order with Lifestyle Enterprises, Inc. (Lifestyle), a furniture component dealer located in Atlanta, to purchase three lots of custom-sized furniture components from Lifestyle for $75,384. Before Lifestyle would ship the order to River Oaks, however, Lifestyle required River Oaks to furnish a letter of credit[1] in favor of Lifestyle to cover the total purchase price of the com-

---

1. A letter of credit is an instrument under which the issuer bank agrees to honor a de-

mand for payment made by a third party.

ponents. On June 18, 1998, The Bank of New York[2] (the Bank) issued a letter of credit in favor of Lifestyle in the amount of $86,000. Then, on July 31, 1998, Lifestyle initiated shipment of River Oaks' orders from the orders' ports of origin in Hong Kong. The orders were to be initially shipped from Hong Kong to Los Angeles, and then on to their ultimate destinations in New Albany, Mississippi, and Compton, California. On August 13, 1998, Lifestyle forwarded the shipping documents and demanded payment from the Bank and River Oaks pursuant to the letter of credit. Lifestyle then informed River Oaks on August 20, 1998, that the shipments had arrived in the United States, had cleared customs, and were ready for delivery; as such, Lifestyle requested that River Oaks arrange for Lifestyle to deliver the shipments to River Oaks' warehouses. Pending delivery to River Oaks, Lifestyle transferred the shipments into storage in California.

After having received payment neither from River Oaks nor under the letter of credit, Lifestyle contacted River Oaks on September 1, 1998, September 3, 1998, September 4, 1998, September 15, 1998, and September 28, 1998, concerning the shipments. Lifestyle then contacted the Bank on November 23, 1998, and December 15, 1998, concerning the shipments and the Bank's letter of credit. It was during this December 15, 1998, conversation that Lifestyle learned that River Oaks had instructed the Bank not to pay for the shipments because Heilig Myers, the River

Oaks customer that had ordered the custom-sized Lifestyle components for use in a motion sofa set, had backed out of the sale, and River Oaks no longer wished to take delivery of the components. The Bank, therefore, denied payment on the letter of credit, and River Oaks never took physical delivery of the components. Lifestyle has been unable to sell the components to another furniture manufacturer because the components were specially sized to meet River Oaks' and Heilig Meyers' specifications.

 Lifestyle filed a motion for allowance of administrative expense claim with the bankruptcy court on January 22, 1999, seeking payment for the furniture components as well as payment for the demurrage[3] incurred by Lifestyle in storing the components. The court held a hearing on the matter on August 20, 1999, and issued an order on December 12, 2000, awarding Lifestyle an administrative claim for $84,205.29.[4] BNY appealed the bankruptcy court's order to this court on May 25, 2001, and briefing of this matter was completed in October of 2001.

### B. Standard of Review

This court has appellate jurisdiction over appeals from the bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in pertinent part:

The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders and decrees, ... and, with leave of the court,

---

2. The appellant in this action, BNY Financial Corp., is a subsidiary of The Bank of New York, and is a major secured creditor of River Oaks as well as River Oaks' post-petition lender.

3. Demurrage is a liquidated penalty owed by a charterer to a shipowner for the charterer's failure to load or unload cargo by a certain time. Lifestyle incurred demurrage charges

of $8,821.29 in connection with the River Oaks shipments.

4. In arriving at the amount of Lifestyle's administrative expense claim, the bankruptcy court added $75,384, the cost of the River Oaks components, and $8,821.29, the incurred demurrage paid by Lifestyle.

from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under Section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

28 U.S.C. § 158(a).

■ The court reviews the bankruptcy court's findings of fact under the clearly erroneous standard, while conclusions of law are reviewed de novo. *Smith v. Associates Comm. Corp. (In re Clark Pipe & Supply Co.)*, 893 F.2d 693, 697–98 (5th Cir.1990); *Mississippi State Tax Comm'n v. Superior Boat Works, Inc. (In re Superior Boat Works, Inc.)*, 246 B.R. 259, 261 (N.D.Miss.2000); Fed. R. Bankr.P. 8013.

### C. Discussion

#### 1. Administrative Expense Claims

The Bankruptcy Code provides that "[a]n entity may file a request for payment of an administrative expense." 11 U.S.C. § 503(a). Section 503(b) provides that, "[a]fter notice and a hearing, there shall be allowed, administrative expenses, . . . including—(1)(A) the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

■ A prima facie case under Section 503(b)(1) may be established by evidence that (1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability of the debtor-in-possession's business to function as a going concern. *Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In the Matter of TransAmerican Natural Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir.1992). In addition, the movant (here, Lifestyle) has the burden of establishing that its claim is for "actual, necessary costs and expenses of preserv-

ing the estate," and that "the debt [benefits the] estate and its creditors." *Toma Steel Supply*, 978 F.2d at 1416; *NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir.1991). After the movant has established a prima facie case, the burden of producing evidence to rebut the prima facie case shifts to the objector (here, BNY); however, the overall burden of persuasion, by a preponderance of the evidence, remains with the movant. *Id.*

■ As for the purpose of Section 503, the Fifth Circuit has stated that

The purpose of Section 503 is to permit the debtor's business to operate for the benefit of its pre-petition creditors. In order to effectuate a successful reorganization, third parties must be willing to furnish post-petition goods or services on credit. Third parties might refuse to extend credit to debtors-in-possession for fear that their claims would not be paid, but an advance payment requirement would impede the debtor's business. Section 503 requires that such claims be given priority, therefore inducing third parties to extend credit and enhancing the likelihood of a successful reorganization.

*Toma Steel Supply*, 978 F.2d at 1415–16.

#### 2. Lifestyle's Motion for Allowance of Administrative Expense

■ Lifestyle filed its request for payment of an administrative expense, pursuant to 11 U.S.C. § 503(b)(1)(A), on January 22, 1999. As for Lifestyle's prima facie case under Section 503, it is undisputed that Lifestyle's claim arises from a transaction with River Oaks, the debtor-in-possession. BNY asserts, however, that Lifestyle is unable to establish the second element of its prima facie case—that the goods or services Lifestyle supplied to River Oaks enhanced the ability of River Oaks to function as a going concern.

Specifically, BNY argues that because River Oaks never took actual physical delivery of the Lifestyle shipments, those shipments were not actually "supplied" to River Oaks and thus did not benefit River Oaks nor enhance its ability to function as a going concern. Therefore, argues BNY, the shipments do not qualify as "actual, necessary costs and expenses of preserving the estate."

The court finds, however, that River Oaks did benefit from the shipments; and the shipments did enhance River Oaks' ability to function as a going concern. Specifically, Lifestyle supplied River Oaks with the means necessary for River Oaks to secure an order from Heilig Meyers for custom-made furniture components. That Heilig Meyers later cancelled the order with River Oaks does not negate the fact that River Oaks received a benefit from the placing of the order. Section 503 does not require that the debtor-in-possession receive the optimal, or even the sought after, benefit before the supplied goods or services can be compensable as an administrative expense. Rather, Section 503 simply mandates that, in order to establish the second element of a prima facie case of entitlement to payment for an administrative expense, the goods or services Lifestyle supplied to River Oaks must have enhanced the ability of River Oaks to function as a going concern. Here, the court finds that the service Lifestyle supplied to River Oaks—the ability to place an order for custom-sized furniture components in order to obtain a substantial amount of business with Heilig Meyers—enhanced River Oaks' ability to function as a going concern.

Further, the court finds that the remainder of BNY's arguments in opposition to the awarding of an administrative expense claim are wholly without merit. As such, the court finds that Lifestyle has suffi-ciently established a prima facie case under Section 503(b)(1), so as to entitle it to the award of an administrative expense claim.

In addition, the court finds that BNY has offered no meritorious evidence or defense in response to Lifestyle's prima facie case. As such, the court hereby finds by a preponderance of the evidence that Lifestyle is entitled to the award of an administrative expense claim. Lifestyle has established its entitlement to the claim, and BNY has not posited any meritorious response in opposition to Lifestyle's prima facie case.

### D. Conclusion

In sum, the court finds by a preponderance of the evidence that Lifestyle is entitled to the award of an administrative expense claim in the amount of $84,205.29. Lifestyle sufficiently established a prima facie case under Section 503(b)(1), and BNY failed to rebut Lifestyle's prima facie case. Accordingly, the December 12, 2000, order of the bankruptcy court granting an administrative expense claim to Lifestyle Enterprises, Inc. for $84,205.29 is hereby affirmed.