**In the Matter of Edward Carlos PLUNKETT, Debtor.**

**Bankruptcy No. 83 B 11287 (PBA).**

United States Bankruptcy Court, S.D. New York.

April 25, 1986.

Gregory Messer, Brooklyn, N.Y., Trustee.

Sonia V. Col, New York City, for debtor.

Harold Jones, New York City, U.S. Trustee.

## MEMORANDUM DECISION AND FINAL APPLICATION FOR ALLOWANCE

PRUDENCE B. ABRAM, Bankruptcy Judge:

The final meeting in this Chapter 7 case was held on February 3, 1986. The Debtor, Edward Carlos Plunkett, filed his Chapter 7 petition on September 6, 1983. His schedules, filed ten days later, reflect unsecured indebtedness of $360,600.20 to eight creditors and secured indebtedness of up to $230,000 to two creditors. Mr. Plunkett's scheduled assets included an undivided interest in two cooperative apartments located in New York City with an estimated market value of $375,000, an undivided interest in a future interest in a piece of land in Brazil. The schedules state that Mr. Plunkett is an income beneficiary under a British trust from which he is estimated to receive $3,000 per month.

Gregory Messer was appointed as the Trustee. His final report reflects total receipts of $411,092.81, disbursements of $348,359.62 and a balance on hand of $62,-733.19. Of the receipts, $400,000 came from the sale of the two cooperative apartments. The disbursements include $260,-354.27 paid to Gloria Plunkett, the Debtor's former wife in settlement of litigation relative to ownership of the two apartments; $42,613.23 paid to the cooperative corporation for maintenance arrears and settlement of litigation involving violations of the proprietary leases for the apartments; and $25,000 paid to Aimee de Heeren, the Debtor's aunt, in settlement of litigation respecting an asserted pledge of the cooperative shares. The three settlements followed substantial litigation. The litigation with the cooperative corporation had been going on for several years. It appears that after purchasing the apartments the Plunketts had embarked on a renovation project relative to the two apartments that failed to be completed in a timely fashion or in accordance with expectations and created,

292

in the cooperative's view, a substantial nuisance and violations of the proprietary lease. Indeed, at the time the petition was filed, the cooperative had a judgment of possession in its favor dated November 27, 1981.

The Trustee requests commissions of $5,090.92, the statutory maximum and fees as his own attorney of $14,595 for 145.95 hours of services ($100 per hour). The U.S. Trustee has filed a statement that these fee requests are reasonable from an administrative point of view. The time spent as attorney required legal services not reasonably required of a trustee. The outcome of the case must be considered excellent even though the remaining distribution to unsecured creditors will be small because the Trustee was able to salvage the apartments and sell them at good prices and pay down substantial claims out of the proceeds. No separate time log for services expended as Trustee has been submitted. It is noted, however, that the time log submitted as counsel does not include time charges for such things as viewing the premises and meeting with brokers, services which the Trustee in fact performed. In light of the very reasonable hourly rate, the excellent result obtained and the quality of the services rendered, the court will award the full commissions and attorney's fees requested by Mr. Messer.

Sonia V. Col, the attorney for the Debtor, has filed an application seeking an allowance of $17,296.25, less a $300 retainer, for 170.5 hours. Ms. Col billed her services at $90 per hour in 1983; $110 an hour in 1984; and $125 an hour in 1985. Ms. Col attaches a retainer agreement dated August 30, 1983 in which Mr. Plunkett agreed to pay her on an hourly basis. The U.S. Trustee recommended in its statement that no fees be awarded to Ms. Col unless the fee request was better substantiated. The U.S. Trustee stated that although it was not fully able to review the application for lack of information, the request appeared high as it amounts to 27% of the remaining

estate. Mr. Messer filed an affirmation in opposition to Ms. Col's fee request and urged that a more precise statement of services rendered was required. In addition, the Trustee urged that the full amount of the application was unreasonable taking into consideration the size of the estate and the Debtor's interest in the case.

Subsequently, Ms. Col filed a supplemental application. She urges that the issues were particularly complex, involving a series of unclear and conflicting legal theories, as well as the application of foreign law. It is stated that many hours were spent cooperating with the Trustee. The Trustee's further affirmation in opposition states that extraordinary amounts of time were expended by Debtor's counsel on routine matters, that the statement that the application of foreign law was required was grossly over-exaggerated and that all issues were determined by the Bankruptcy Code. In the Trustee's opinion the complexity of the case had nothing to do with the British Trust but rather involved the two New York apartments. Nor does it appear that the Trustee requested such extensive cooperation from Ms. Col.

The comparative size of Ms. Col's request is indeed extraordinary. Ms. Col is requesting more by almost 20% than the Trustee is requesting for counsel services. It appears to the court that counsel for the Debtor lacked familiarity with bankruptcy practice which caused her failure to appreciate the limited role in the collection and liquidation of his asserts that a Chapter 7 debtor has.

The commencement of a Chapter 7 case creates an estate comprised of the debtor's property wherever located. Bankruptcy Code § 541(a). It is the Trustee's duty to collect the estate and reduce it to cash for the purpose of paying dividends to creditors. Code §§ 704 and 726.

The duties of the debtor are set forth in Code § 521. As Code § 521 [1] read at the time this case was filed, it provided:

"§ 521. Debtor's duties. The debtor shall—

"(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, and a statement of the debtor's financial affairs;

"(2) if a trustee is serving in the case, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title;

"(3) if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate; and

"(4) appear at the [discharge] hearing required under section 524(d) of this title."

It is apparent from Code § 521 that the debtor's primary duty is one of continuing cooperation after the initial phase of the case when a trustee is appointed and the turnover of property is made. Until a trustee is appointed, and Mr. Messer was not appointed on September 15, 1983, only nine days after the case was filed, the debtor has a caretaker rule with respect to property of the estate so that it can be preserved and turned over to the trustee when appointed. In usual circumstances, the debtor can protect the property of the estate during this brief period by advising all persons that the Chapter 7 case has been filed and that the estate's property is protected by the automatic stay provided by Code § 362. Once actually notified of the automatic stay, all persons act at their peril in taking acts directed at any property which may be property of the estate. See *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977).

This Chapter 7 petition was filed on the day of a scheduled hearing in landlord-tenant court relative to the apartments. Certainly, it was necessary for Debtor's counsel to take steps to advise the parties involved in that matter that the Chapter 7 petition had been filed and the automatic stay invoked. Ms. Col's initial time entries relative to this aspect read:

| | | |
|---|---|---|
| 9/5/83 | Telex correspondence w/British counsel; preparation bankruptcy petition; preparation order to show cause re L/T matter | 6.0 |
| 9/6/83 | Filing of petition w/Bankruptcy Court; L/T Court hearing | 5.5 |
| 9/7/83 | Legal research; L/T Court appearance; application to bankruptcy judge for restraining order; meeting w/judge P. Abram | 5.0 |
| | | 16.5 |

The amount of time expended on these services is substantially in excess of that which an experienced bankruptcy attorney would have expended on what was, in truth, a rather routine matter, ensuring that the automatic stay operated to stay pending litigation.

The application is replete with similar examples. For example, on March 18 and 19, 1984, Ms. Col spent 11.75 hours preparing for trial. Although which trial is not identified in the time summary, it appears to have been the lien litigation in which the Debtor's aunt and former wife were involved. The conduct of this litigation was the Trustee's responsibility. The Debtor's only duty was to supply the Trustee with any relevant information requested and to appear as a witness, if required. Ms. Col did not represent Mr. Plunkett in his pre-petition litigation with the cooperative or respecting his divorce or otherwise and therefore she had little to contribute in the way of information or knowledge about the issues in the litigation.

To the extent of Mr. Plunkett's participation as a party in that litigation Ms. Col

---

**1.** Code § 521 was amended in 1984 by the Bankruptcy Amendments and Federal Judgeship Act

in ways not material to this decision.

is not entitled to compensation because the services were not in furtherance of assisting the Debtor in performing his duty. Mr. Plunkett's interest in the litigation over the apartments and over the claims of his ex-wife and aunt appears stemmed from the effect the outcome and the amounts of his ex-wife received would have on his divorce settlement and the amounts his aunt received might have on his future relations with his family.

The Debtor's schedules are carefully prepared. The Debtor appeared at his discharge hearing. The Debtor cooperated with the Trustee in the various litigations. In performing these duties, the Debtor was assisted by his counsel.

 Bankruptcy Code § 330(a) provides that the court may award to a debtor's attorney reasonable compensation for actual, necessary services rendered based on the time, nature, extent and value of the services and the cost of compensable services in a case other than under this title. In order to be compensable from the estate, the services must either be in aid of the administration of the estate or of benefit to the estate. However, the weight of authority is that compensable legal services are limited to services rendered in assisting debtors in performing their legal duties rather than exercising their legal privileges. See 2 Collier on Bankruptcy (15th Ed.1985) ¶ 330.04[3]. See also *In re Rhoten*, 44 B.R. 741 (Bankr.M.D.Tenn.1984); *In re Chriss*, 38 B.R. 655 (Bankr.S.D.N.Y. 1984); and *In re Tabala*, 48 B.R. 871 (Bankr.S.D.N.Y.1985).

This court has determined that an award of $4,500 is appropriate. This award substantially exceeds the $600–1,000 customarily charged for the filing of a Chapter 7 petition. Based on this court's knowledge of these proceedings, this court has concluded that the Debtor's participation directly and through his counsel in the various litigations was intended, at least in part, as cooperation with the Trustee and that it was of assistance to the Trustee and the court in negotiating a path between the charges and countercharges made by the various parties. However, in large part, the court finds the services non-compensable because they were not necessary and were merely volunteered and they were excessive in quantity due to counsel's lack of familiarity with bankruptcy practice and procedure. This court cannot compensate a professional for her education. *In re St. Pierre*, 4 B.R. 184 (Bankr.D.R.I. 1980).

The court has signed separate orders fixing the compensation awarded.