**In re J.A.V. AG., INC., Debtor.**

**Bankruptcy No. 90–53580–LMC.**

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

April 2, 1993.

Martin W. Seidler, San Antonio, TX, for Chapter 7 Trustee.

Charles Russell Bomba, San Antonio, TX, for Uresti and Sons.

***DECISION AND ORDER DENYING TRUSTEE'S MOTION FOR RECONSIDERATION OF ORDER AUTHORIZING PAYMENT OF ADMINISTRATIVE PRIORITY CLAIM***

LEIF M. CLARK, Bankruptcy Judge.

CAME ON FOR HEARING the Trustee's Motion for Reconsideration of an Or-

der Authorizing the Payment of an Administrative Priority Claim. Upon consideration of the legal arguments and review of the facts adduced at the hearing, the court, making the conclusions of law and findings of fact stated herein, denies the Trustee's Motion.

## BACKGROUND

The facts of the case are relatively simple. J.A.V. Ag., INC. filed its petition for relief under chapter 12 of Title 11 on November 9, 1990. The Debtor, by and through its principal, Mr. Joe Van de Walle, Jr. ("Van de Walle"), continued in possession and management of its property.

In 1989 the Debtor had entered into a lease/purchase contract with Uresti & Sons Trucking Company ("Uresti") under which Uresti leased certain trucks, with the lease payments credited to their ultimate purchase. The arrangement was mutually beneficial as the Debtor had a Texas Railroad Commission permit, and Uresti had drivers and servicers for the trucks. Uresti transported goods for J.A.V. Ag, retained the proceeds from backhauls, looking forward to eventually, after a series of scheduled payments, becoming the owner of the trucks. Actual record ownership remained in the Debtor until such time as Uresti satisfied all the payment obligations under the lease/purchase contract.

In February 1991, the Debtor repossessed the trucks from Uresti, breaching their contract. The Debtor intended to sell the trucks to a third party, ostensibly for the benefit of the estate. On March 1, 1991, the Debtor converted its case from Chapter 12 to Chapter 7 (the "Conversion Date"). However, the interim chapter 7 trustee, Mr. Martin Seidler, was not actually appointed until March 11, 1991 (the "Appointment Date").[1]

Later that same month, Uresti moved to compel abandonment, asserting his equitable ownership of the trucks. A hearing on this motion was held on April 3, 1991, at which the court concluded that Uresti was indeed the rightful owner of the trucks and, as such, was entitled to record ownership and possession.[2] The court ordered the vehicles surrendered immediately to Uresti. The chapter 7 trustee explained that he was entirely unaware of the whereabouts of the trucks, so the court, having no other alternative, ordered the principal of the Debtor, Mr. Van de Walle, to return the trucks, under penalty of civil contempt.

At a later contempt hearing (the trucks were not timely returned), the debtor's principal, Joseph Van de Walle, explained how he had repossessed the trucks from Uresti prior to the conversion, in an effort to sell them for what he claimed was the benefit of the estate. Van de Walle had permitted the putative new purchaser to use the trucks, at no charge. When the trucks were ultimately returned on April 12, 1991, it was discovered that the trucks had been damaged and were in need of repair. The damage had occurred after the Conversion Date, but before the Appointment Date (the "Gap Period"), and had evidently been caused by the putative third party "purchaser," who had enjoyed using the trucks for free but had not been maintaining them. Uresti documented the cost of repairing the trucks and filed a proof of claim for these costs. On July 13, 1992, the court entered an Order allowing Uresti an Administrative Claim in the amount of $11,250.00.

The trustee brought the instant Motion, praying that this court reconsider the allowance of Uresti's claim as an administrative priority claim. Essentially, he argues that, because the damage to the trucks occurred during the Gap Period prior to his accepting his appointment as interim trust-

---

1. There is always a certain amount of lag time between the conversion of a case and the appointment of an interim trustee. Notice of the conversion has to be transmitted to the U.S. Trustee, who then has to select a trustee from the panel. The selection is filed of record and the trustee selected is notified. That trustee must then affirmatively accept the appointment (or reject it due to a conflict of interest, for example). The entire process will take at least a day and quite often takes more than a week.

2. The Court authorized abandonment of the Trucks, removing them from the estate.

ee, and because it was Van de Walle, acting without authority for the bankruptcy estate, whose actions damaged the trucks, the cost of the damages cannot be treated as an administrative priority claim. The trustee contends that the damage claim should instead be treated as a prepetition claim of the chapter 7 estate, under 11 U.S.C. § 348(d).[3] Uresti counters that Van de Walle, as principal of the corporate Debtor in its capacity as debtor-in-possession, had a duty to preserve the assets of the estate. Uresti further claims that the repairs were actual and necessary costs to preserve the trucks, which were at all times property of the estate, and which were damaged while the estate was benefitting from their use. Thus, he concludes, the costs of repairs are properly allowed as administrative priority claims under Section 503(b)(1)(A), and so should be carved out from Section 348(d), if that section even applies.[4]

## ANALYSIS

### 1. The Trucks Were Property of the Bankruptcy Estate

■ Initially, we observe that the trucks were property of the bankruptcy estate until such time as they were abandoned by order of this court, even though the court determined that equitable title was in Uresti. Record ownership was still with the Debtor, although Uresti had possession. *See* 11 U.S.C.A. § 541(a)(1) (Supp.1992) (all *legal* or equitable interest of the debtor as of the commencement of the case are property of the estate). The Debtor later, but before the Conversion Date, repossessed the trucks and transferred possession (but not legal title) to a potential third party

purchaser, and so did not alter their status as property of the estate.

■ Upon conversion of the case from chapter 12 to chapter 7, the property of the chapter 12 estate became property of the chapter 7 estate. *See* 11 U.S.C.A. § 348(a) (conversion does not affect the date of filing or the order for relief) *and* § 541(a)(1) (Supp.1992) (property of the estate established as of the date of filing). The trucks only ceased to be property of the estate when the court entered its Order of April 10, 1991 (the "April 10 Order"), which found that Uresti was the equitable owner of the trucks, that Uresti was also therefore entitled to legal title, and which ordered the abandonment of the vehicles.[5] The damage to the trucks occurred after the Conversion Date, during the pendency of the chapter 7 case, but before the appointment of the chapter 7 interim trustee (and of course before the abandonment).

### 2. Van de Walle was Acting for the Chapter 7 Estate

While the trustee recognizes that the trucks were damaged after the Conversion Date, the trustee argues that the costs of repair should not be considered administrative expenses of the chapter 7 estate because the damages resulted from the actions attributable ultimately not to the trustee, but to Mr. Van de Walle, who was not authorized to act for the chapter 7 estate.

■ During the attempted reorganization of J.A.V. Ag., Inc., the Debtor continued in possession and control of the assets of the estate. 11 U.S.C.A. § 1203 (Supp. 1992) (chapter 12 debtor in possession has

---

**3.** Section 348(d) provides as follows:

A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section ... 1208 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

11 U.S.C. § 348(d). The section operates to convert post-petition unpaid operating expenses as prepetition claims. The section carves out administrative priority claims, however.

**4.** Because the damage occurred after the conversion of the case, it would seem on its face that section 348(d) has no application here. The Trustee, however, argues that we should apply section 348(d) to all events occurring prior to *his appointment,* as opposed to the date of conversion.

**5.** The effect of abandonment is to remove property from the estate. 11 U.S.C. § 554.

same powers and duties as chapter 11 debtor in possession). Van de Walle, as the principal of the Debtor, was authorized to operate the business of the Debtor during the pendency of the chapter 12 case. 11 U.S.C.A. §§ 1203, 1106, 1108 (Supp.1992).

11 U.S.C. § 1208(a) authorizes a debtor in possession to convert the chapter 12 case to one under chapter 7 at any time. The conversion of the chapter 12 case to a chapter 7 case constitutes the entry of an order for relief under chapter 7. 11 U.S.C.A. § 348(a) (Supp.1992). Upon the conversion of the case to chapter 7, the authority of the debtor in possession over its bankruptcy estate terminates. *See Vreugdenhil v. Hoekstra,* 773 F.2d 213, 215 (8th Cir.1985) (debtor's trustee-like authority as debtor in possession terminates with entry of court's order converting case).

The Bankruptcy Code requires the authority of a debtor in possession to terminate upon conversion because, immediately upon conversion to chapter 7, in an ideal world where no bureaucratic delays exist, one could assume the instantaneous appointment of an interim trustee. 11 U.S.C.A. § 701(a) (Supp.1992) (U.S. Trustee will appoint interim chapter 7 trustee "promptly" after chapter 7 order for relief entered). Were the U.S. Trustee's office able to instantaneously appoint interim trustees upon conversion, there would indeed be a continuity of responsible persons for the assets of the estate during the conversion period and this problem would never have arisen. However, instantaneous appointments do not occur in the real world, and did not transpire in this case.

If the Code cut a former debtor in possession free from further obligations upon conversion of the case to chapter 7, Van de Walle's duties to the estate would have ended the moment the notice of conversion was filed. However, that cannot be the case; a debtor continues to owe certain administrative duties to the bankruptcy estate even after conversion to chapter 7. A former debtor in possession at the very least has a duty to safeguard the assets of the estate until the appointment of an interim trustee. *See Feldman v. Yaffe* (In re *Mr. Henry's Waldorf, Inc.,* 34 B.R. 866, 867 (Bankr.D.Md.1983) (debtor remains in fiduciary capacity until appointment of trustee, a successor fiduciary)).[6]

The drafters of the Bankruptcy Code realized that the administration of an estate would be nearly impossible without the cooperation of the debtor. Debtors who file voluntary petitions under chapter 7 of the Bankruptcy Code receive the safeguards provided by the Code, but in return must also assume the responsibilities the Code imposes. *See In re Mathis Ins. Agency, Inc.,* 50 B.R. 482, 487 (Bankr. E.D.Ark.1985) (quoting *In re Martin,* 30 B.R. 24, 26 (Bankr.E.D.N.C.1983)). Both Section 521 of the Code and Rule 4002 impose a myriad of duties upon a debtor associated with safeguarding the assets of the estate and cooperating in the administration of the estate.[7] 11 U.S.C. § 521;

---

**6.** In the *Mr. Henry's Waldorf* case, the court eventually held the debtor's principal personally responsible for liabilities resulting from the principal's unauthorized abandonment of estate property. 34 B.R. at 868–69. Such "[a]bandonment was not the exercise of judgment, but rather abdication from responsibility." *Id.* at 868. The reasoning in *Waldorf* is persuasive, and could support imposing damages on Van de Walle individually for his role in damaging the trucks. However, the court need not reach that issue in this decision, for at issue here is solely whether *the estate* is liable to Uresti, and whether that liability is an administrative priority claim. Even if Van de Walle were individually responsible for the costs incurred, he was nonetheless acting for the Debtor as its authorized agent (because he was president of the company), and the Debtor must therefore be said to be the actor (and hence responsible for its actions). 11 U.S.C. §§ 1208, 521; Fed.R.Bankr.P. 4002, 9001(5). Mr. Van de Walle was not himself the debtor in possession, and corporate debtors of course can only act through the human beings who are their officers, directors, or employees. By the same token, nothing prevents the estate from independently pursuing Mr. Van de Walle for contribution or indemnity.

**7.** Federal Bankruptcy Rule 9001(5) provides: "When any act is required by these rules to be performed by a debtor ... and the debtor is not a natural person: (A) if the debtor is a corporation, "debtor" includes, if designated by the court, any or all of its officers, members of its board of directors or trustees or of a similar controlling body, a controlling stockholder or member or any other person in control." Fed.

FED.R.BANKR.P. 4002. These duties include providing information, turning over assets of the estate, and appearing at examinations and hearings. By no coincidence, both the statute and the rule require the debtor to cooperate with the trustee in the administration of the bankruptcy estate. *See* 11 U.S.C.A. § 521(3) (Supp.1992) ("if a trustee is serving in the case, *cooperate with the trustee as necessary* to enable the trustee to perform the trustee's duties under this title") (emphasis added); FED. R.BANKR.P. 4002(4) ("the debtor shall cooperate with the trustee in ... the administration of the estate"). Moreover, the duties of the debtor enumerated in section 521 are not exhaustive. *See* H.R.REP. No. 595, 95th Cong., 1st Sess. 360 (1977).

■ After a chapter 11 or chapter 12 case is converted, then, even though the debtor's authority to act as debtor in possession is terminated, the statutory obligation to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties" continues. This duty takes on especial importance in the gap period between the filing of a notice of conversion and the actual appointment of an interim trustee:

> "It is apparent from Code § 521 that the debtor's primary duty is one of continuing cooperation after the initial phase of the case when a trustee is appointed and the turnover of property is made. Until a trustee is appointed ... the debtor has a caretaker rule [sic, read "role"] with respect to the property of the estate so that it can be preserved and turned over to the trustee when appointed."

*Matter of Plunkett*, 60 B.R. 290, 293 (Bankr.S.D.N.Y.1986) (trustee was not appointed immediately after chapter 7 petition filed).

■ A similar duty to safeguard the estate prior to the appointment of a trustee was recognized under the Bankruptcy Act. One court explained that a principal of a corporate debtor had the responsibility to act for the preservation of the assets of the estate pending the appointment of a trustee. *See Application of Broadmoor Enterprises Corp.*, 84 Misc.2d 120, 374 N.Y.S.2d 1013, 1016–17 (N.Y.Sup.Ct., Richmond Cty., 1975). *Broadmoor* is persuasive. Without such a rule, assets of every converted bankruptcy case would be placed in jeopardy at the moment of conversion. The debtor's obligation to cooperate, imposed by Section 521, must therefore expressly include the obligation to safeguard and be responsible for the estate's assets during the gap period between the filing of a notice of conversion and the actual appointment of an interim trustee.

■ If a caretaker, while taking care of property of an estate, incurs expenses, who is responsible for those expenses—the caretaker, or the estate for which the caretaker is acting? Unless the caretaker is a pure volunteer, his or her actions on behalf of the estate for which he or she is working must be imputed to the estate, under the doctrine of *respondeat superior. See generally Hemingway Transport, Inc.*, 73 B.R. 494, 504 (Bankr.D.Mass.1987), *citing Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968). And we know that the caretaker here is no mere volunteer, for the Bankruptcy Code itself imposes the caretaking duty on the debtor. 11 U.S.C. § 521.

■ During the gap period in this case, Van de Walle was justifiably acting in a caretaker capacity on behalf of the Debtor with respect to the trucks. During the administration of the chapter 12 estate, he had (as an officer of the debtor in possession) clothed the potential third party purchaser with possession of the trucks, which were property of the estate, in hopes of selling the trucks to collect proceeds which would benefit the estate. Van de Walle continued to oversee this potential sale through the Gap Period. Van de Walle was the only one who could "administer"

R.BANKR.P. 9001(5). Therefore, the duties imposed upon the debtor fell squarely upon the

shoulders of its principal, Van de Walle.

the estate during the Gap Period.[8] His actions were within the contemplation of those duties sanctioned under the Code and Rules. 11 U.S.C. § 521; FED.R.BANKR.P. 4002(4).[9]

### 3. Expenses Associated with the Truck Repairs are Entitled to Administrative Priority.

■ Administrative expenses are those which are "actual, necessary costs and expenses of preserving the estate." 11 U.S.C.A. § 503(b)(1)(A) (Supp.1992). To be entitled to administrative claim status, the claim must arise from a debt incurred post-petition, in connection with a transaction between the claimant and the trustee or debtor-in-possession, and which benefits the debtor in operation of its business. *See Keegan Utility Contractors, Inc.*, 70 B.R. 87, 89 (Bankr.W.D.N.Y.1987); *see also Matter of Transamerican Natural Gas Corp.*, 978 F.2d 1409, 1419 (5th Cir.1992) (prima facie case under § 503(b)(1): claim arises from transaction with debtor-in-possession and goods or services supplied enhance ability of debtor-in-possession's business to function as going concern). "Ultimately, administrative expense status should be granted only to claims representing post-petition debts incurred by the debtor to preserve the estate." *See Keegan Utility Contractors*, 70 B.R. at 89.

■ As a threshold matter, this court found that all the damage occurred to the trucks between the Conversion Date and April 10, 1992, while the trucks were property of the chapter 7 estate. Accordingly, the expenses occurred post-conversion. In addition, the costs of repair were incurred as a result of a transaction between the Debtor and Uresti. The trucks were originally the object of a lease/purchase contract between the Debtor and Uresti. During the pendency of the chapter 12 estate, Van de Walle repossessed the trucks. Van de Walle, acting for the estate, continued to deprive Uresti of the trucks through the life of the chapter 12 estate, through the Gap Period and until their eventual return on April 12, 1992.

Finally, the use of the trucks benefitted the chapter 7 estate. Benefit to the estate cannot always be calculated in dollars and cents, rather the mere ability to conduct some business is a benefit to the estate. *See Transamerican Natural Gas Corp.*, 978 F.2d at 1420. At the April 3 hearing, the trustee argued that the trucks should not be subject to turnover to Uresti as the trustee planned to sell the trucks for the benefit of the estate. Similarly, at a later contempt hearing, Van de Walle testified that he repossessed the trucks for sale to third parties for the benefit of the estate. In addition, the operation of the trucks during the Gap Period, along with the income from those operations, surely benefitted the chapter 7 estate. At the very least, the estate benefitted from the use and possession of the trucks without having to pay for the costs of keeping them in good repair. *See In re United Trucking Service, Inc.*, 851 F.2d 159, 162–64 (6th Cir.1988) (benefit to estate found where debtor used third party's vehicles and failed to repair).

The primary purpose of the benefit analysis under 11 U.S.C. § 503(b) is to prevent unjust enrichment to the estate. *See Transamerican Natural Gas Corp.*, 978 F.2d at 1419. The trustee argues that the costs of repair of the trucks should not be

---

8. At the April 3 hearing, it was discovered that the Trustee did not know the whereabouts of the Trucks. At that hearing, the Trustee had argued that the Trucks were property of the estate and that the Trucks were to be sold, the proceeds to benefit the estate. During the period that the Trustee was unaware of the location of the Trucks, the Trucks had been given to the potential third party purchaser, who made some use of them. It was during that use that the Trucks were damaged. Van de Walle was ordered to produce the Trucks for turnover to Uresti.

9. Even if they were not discharged properly. As noted earlier, there is a strong argument to be made that Van de Walle's allowing a third party to use the trucks without compensation was wrongful and conceivably led to the damage the trucks ultimately suffered. *See In re Mr. Henry's Waldorf, supra.* The sole question here is whether the estate is liable, regardless whether the estate has a claim for indemnity against Van de Walle individually.

administrative expenses of the chapter 7 estate because Van de Walle had no authority to act for the estate during the Gap Period.[10] This is not persuasive. The estate benefitted from the use and possession of the trucks regardless of who was acting for the estate at the time. To allow the estate to benefit from the use and possession of the trucks without requiring it to pay the costs associated with their usage would be to unjustly enrich the estate.

Accordingly, the costs of repair were appropriately classified as administrative priority since the costs contributed to the preservation of assets of the estate.[11] *See* 11 U.S.C.A. § 503(b)(1)(A) (Supp.1992); *In re Transamerican Natural Gas Corp.*, 978 F.2d at 1419–20.

## CONCLUSION

As the principal of the former debtor in possession, Van de Walle acted in the administration of the estate during the Gap Period. During that time, Van de Walle's actions resulted in damage to property of the estate, the trucks later turned over to Uresti. As the trucks were damaged while still property of the estate, by and through one authorized to administer the estate during the Gap Period, the costs associated with repairing the trucks are administrative priority expenses. The motion for reconsideration is denied and the prior order of this court is ratified and affirmed.

**SO ORDERED.**

---

**10.** If the damages to the Trucks of which Uresti complains occurred prior to the Conversion Date, the expenses associated with their repair would certainly have been expenses of administration of the chapter 12 estate. 11 U.S.C.A. § 503(b)(1)(A) (Supp.1992) (administrative expenses allowed for the actual, necessary costs and expenses of preserving the estate). If the damage had occurred under the auspices of the Chapter 7 Trustee, the liabilities would similarly have constituted an administrative claim of the chapter 7 estate. That the damages had the unfortunate happenstance of occurring after the Conversion Date but before the Appointment Date should not affect the analysis.

**11.** This Court has previously declined to compensate those who seek to benefit a bankruptcy estate without the authorization of the court and knowledge of the estate's fiduciary. *See* In re *Office Products of America*, 136 B.R. 675, 689 (Bankr.W.D.Tex.1992). However, in the case at bar, Uresti was not a Good Samaritan who later sought payment for services from the bankruptcy estate. Rather, Uresti was an unwilling participant whose property was wrongfully repossessed by the fiduciary of the bankruptcy estate, Van de Walle. Any benefit to the estate stemming from the repossession of the Trucks were garnered by Van de Walle and not foisted unknowingly upon the estate by Uresti.